## Truax v. Commonwealth.

(Decided October 8, 1912.)

## Appeal from Spencer Circuit Court.

1. Homicide—Motion for Change of Venue—Evidence on Motion.— Upon the trial of a motion for a change of venue, evidence examined and held that it cannot be said that the lower court abused its discretion in refusing the change of venue. Moreover, the trial of defendant was by a jury from Nelson County, and it appears that the surroundings were such as that a fair trial was afforded him.

2. Trial—Discretion of Trial Court—Rebuttal Witnesses—Evidence in Chief.—It is well settled that a trial court has a right to exercise a reasonable discretion in admitting testimony in chief by rebuttal witnesses.

3. Criminal Law—Wound of Appellant—Evidence.—The Commonwealth had a right to show upon the trial of appellant that the wound exhibited by him was received in a manner other than that claimed by him.

4. Criminal Law—Argument of Counsel—Improper Argument of Commonwealth's Attorney.—Where the trial in every other respect was fairly conducted and it appears that no other verdict could have been rendered, the case will not be reversed on account of improper argument.

EDWARDS, OGDEN & PEAK and HENRY W. SANDERS for appellant.

JAMES GARNETT, Attorney General, M. M. LOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

Appellant was tried in the Spencer Circuit Court and sentenced to imprisonment during his life, for the murder of Grant Stoner. He filed grounds containing many reasons, for a new trial which the court overruled and he has appealed.

It would be tedious and unprofitable to make a detailed discussion of the evidence adduced on the trial so we will only state it in substance. Appellee's evidence tended to show that Stoner lived in Sparta, Kentucky; that he had been traveling over the State for several years with a dog and pony show; that he had been at Taylorsville, the place of the alleged murder, exhibiting his show for nearly a week and appellant had been a regular attendant; that on Friday, the day of the kill-

ing, apellant with his horse and buggy, and one Derrington, an employe of the show, went to a place a few miles away where they met a person with whisky in pint bottles, two of which they obtained, took two or three drinks, returned to the show tent and placed the remainder in Derrington's dressing room in the tent; that on the evening following, just before time to open the door of the tent for the sale of tickets, appellant and other persons were in the tent and Mrs. Stoner, the wife of the deceased, entered and stated that all persons present must retire and purchase tickets at the door; that all the persons in the tent left except appellant who said to her that he was expecting his wife and daughters and that he would watch for them and buy tickets for them and himself when they came and Mrs. Stoner said all right. Soon after this Mrs. Stoner discovered that appellant's wife and daughters were in the tent and she called his attention to this fact and he went out and bought a ticket for himself and returned inside of the tent. The testimony further shows that during the performance appellant went to the room of Derrington to get a drink of whisky and took a friend with him; that while they were in there with Derrington talking Stoner discovered them and ordered them out stating that he did not allow that sort of conduct and the friend left immediately but appellant remained just outside of the dressing room while Stoner lectured Derrington about his conduct, and when Stoner came out of the room he found appellant standing there and said to him, I thought I told you to go, took hold of him, started towards the front entrance, and appellant said to him that he did not want to go out that way, that he wanted to leave the tent by the back way. Stoner said all right and went with him to the back of the tent, raised the curtain and appellant went out. It is further shown that when the show was over appellant entered the tent and said that he wanted to see Stoner a few minutes; that Stoner was in the dressing room at that time and answered that he was counting his tickets and would be out in a minute; that when he came out appellant said to him, you have treated me badly; why did you do it? Stoner answered that he did not treat him badly; that he caused him to leave the tent out of the respect "I had for my wife and child." Appellant answered, "I will take off my hat to Mrs. Stoner any

time" but you treated me dirty, and at that moment appellant fired a pistol at Stoner, they grappled and another shot was fired and both fell with their heads between two boxes and Stoner died in a minute or two and appellant went up town. It appears from the Commonwealth's testimony that Stoner made no demonstration or effort to strike appellant before the shot was fired and that he had no pistol or anything else on his person with which to strike appellant. The Commonwealth also proved that after Truax was ejected from the tent he went up town, a few blocks from the show tent; that he was seen driving in a buggy toward the show tent with one Cleve Daley; that he had a pistol in his hand resting upon his right knee; that he was heard by several persons to say that he was going back and "if he did not apologize for what he did he was going to fix him." This was the substance of the Commonwealth's testimony in chief.

Appellant's evidence, and that of the several witnesses corroborating him, was in effect the same as the Commonwealth's up to the point where he was ejected from the tent. He and some of his witnesses say that when the curtain was raised he was kicked out of the tent, and he says that his left hip was considerably bruised by the kick. They further stated that appellant sat on a pile of rocks just outside of the tent until the show was over; that he did not go down town in a buggy with a pistol in his hand; that he did not make the remark that if he did not apologize he would fix him or any remark like it; that after the show was over he went into the tent through the main entrance after his hat which he had left there and saw Stoner and said to him, in substance, the words mentioned; that just after he said to Stoner that he would take his hat off to Mrs. Stoner any time and told him that he had treated him badly, Stoner struck him just above his left eye with the butt of a pistol which he had seen him put into his pocket just about the time he entered the tent; that the lick threw him off his balance back against a rope and Stoner clinched him and he fired the shots under the belief that he was in great danger of losing his life at the hands of Stoner; that they fell between the two boxes as stated; that the lick on the side of his face and just above the eye made a considerable gash, and that the gash was not made by the fall against one of the boxes.

The Commonwealth then proved that he had his hat when he was ejected from the tent; that he was seen up town with it on, before the shooting and when he entered the tent after the show; that his general reputation for morals was bad, and made an effort to show that the injury above his eye, the scar of which he exhibited to the jury, was made by another person in a difficulty long before the shooting occurred.

Counsel for the parties have filed long and interesting briefs, but each appears to have prepared their brief without any knowledge of what the other contained, consequently each brief refers to alleged errors not discussed in the other brief. Appellant filed thirty seven reasons in the lower court for a new trial but presents and argues but four grounds in this court, to-wit: First, the refusal of the court to grant a change of venue; second, errors in the admission and exclusion of evidence; third, misconduct of counsel for the prosecution; and fourth, errors in instructions. The larger part of the brief is devoted to the first alleged error. It appears that this killing aroused considerable feeling and excitement; that a petition requesting the judge of the circuit court to call a special session and empanel a grand jury to indict Truax so that he might be tried at the earliest possible day, was drawn and left at the fair grounds .for signatures. Immediately after appellant was indicted he filed an affidavit for a change of venue accompanied by the affidavits of two other persons no kin to him as required by the statute, and moved the court for such change and on request of the Commonwealth's attorney the motion was set to be heard on a certain day. On the trial of the motion, the Commonwealth introduced thirteen or fourteen witnesses who gave it as their opinion that Truax could obtain an impartial trial in Spencer County, and appellant introduced about the same number of witnesses who gave it as their opinion that he could not have such a trial in that county. The reasons given for these different opinions were about like those usually given on the trial of such motions. The court overruled the motion and endeavored to get a jury in Spencer County but failed and sent the sheriff to Nelson County to obtain a venire out of which a jury was secured. The lower court passed upon this motion by virtue of section 1109 of the statutes which authorized him to grant the change of venue if it ap-

peared that appellant could not obtain a fair and impartial trial in Spencer County, and to refuse it if it did not so appear. The evidence on the motion was such that we could not say that the lower court abused its discretion in either granting or refusing the change of venue. In the case of Crockett v. Commonwealth, 100 Ky., 382, this court said:

"It does not appear to us that the trial judge abused his discretion in refusing the change of venue. 'The circuit judge has a sound discretion in deciding such motion, and, of course, better opportunity of properly estimating credibility of witnesses and weight of evidence than this court; and, therefore, while we have authority to revise and reverse his judgment on such motion, it is not nor ought to be done except when we are satisfied that discretion has been abused.' (Howard v Commonwealth, 15 Ky. L. R., 874.)"

In addition to what we have said, the evidence on the motion showed that Truax had been a resident of Spencer County all his life and that he had many relatives in the county, and that Stoner was a resident of Sparta, Gallatin County, Kentucky. These facts should have made it to appellant's advantage to be tried in Spencer County, and more than this, he was tried by a jury from Nelson County. We are, therefore, of the opinion that the surroundings were sufficient to afford him a fair trial.

The second error assigned is the exclusion and admission of evidence. We have not been referred to nor have we been able to find where any evidence was excluded that could have possibly benefited appellant. As to the admission of evidence, it is claimed that appellee was allowed to introduce evidence in rebuttal that ought to have been introduced, if at all, in chief. There is no claim that the evidence was incompetent, but it is contended that it was introduced at the wrong time. As stated, appellant testified that he went back into the tent after the show was over, to get his hat, and the Commonwealth introduced witnesses in rebuttal who stated that he did not leave his hat in the tent, but had it when ejected from the tent and when he was up town and when he had his pistol on his knee while in the buggy with Daley going towards the tent. The introduction of the testimony with reference to the hat and other evidence which had been introduced in chief, was a technical error

and one that was difficult to control. The defense is placed at a disadvantage in a prosecution unless the Commonwealth introduced in chief all the evidence tending to incriminate him. It is well settled, however, that a trial court has a right to exercise a reasonable discretion in admitting testimony in chief by rebuttal witnesses. In the case of Abbott v. Commonwealth, 23 Ky. L. R., 226, this court quoted with approval from the case of Williams v. Commonwealth, 90 Ky., 596, the following:

"It is well settled that the trial judge has a reasonable discretion in such case, but there should always be good cause for introduction of testimony out of the regular order, especially where injustice may likely result therefrom."

We are of the opinion that no injustice likely resulted from the introduction of the testimony complained of in the case at bar, and that the trial court did not abuse its discretion in allowing it to be introduced.

The third objection is to the misconduct of counsel for the prosecution in repeating questions to appellant and other witnesses on cross-examination and to his improper argument to the jury. It appears that when appellant was on the witness stand he exhibited his head and face to the jury for its inspection, claiming that the wound spoken of was inflicted by Stoner a moment before he did the shooting. The Commonwealth attempted on cross-examination of appellant and by witnesses in rebuttal, to show that appellant received the wound in some other way. The Commonwealth's attorney asked him if Dan Raisor did not cause it by hitting him with a rock, but the court sustained objections to the question and it was then repeated, in different forms, several times and an objection was sustained each time. He also asked appellant if he did not have several fights and in some one of them receive the wound. Dan Raisor was also asked if he did not have a fight with appellant and hit him with a rock and knock him off of an embankment, but the court sustained objections to the questions because the Commonwealth's attorney did not specify the point on the head he had reference to. Appellant objected to the repeating of questions which tended to show that appellant had had other troubles besides the one he was being prosecuted for; that he was a fighter and of bad morals. The Commonwealth had a right to

show that the wound exhibited was received in a manner other than that claimed by appellant, although it might have a tendency to prove to the minds of the jury that he was of a doubtful character. The trouble with the Commonwealth is that the questions were not properly formed—they did not inquire if he had been struck on the head at the point where the wound was, and for this reason the court sustained objections to them. We are of the opinion, however, that the repeating of the questions did not materially affect the substantial rights of appellant.

The misconduct of counsel in making his argument before the jury, of which complaint is made, consisted of the following statements:

"No longer than yesterday a band of mountain men armed themselves and marched into the temple of justice and shot his honor from the bench, an attorney from the bar, a juror from the jury box and the stenographer who was sitting at her table."

Again:

"Find this defendant guilty, and you will go back to your county with the approval of this good citizenship."

And also the following:

"If there had been nobody but myself and the county attorney to represent the Commonwealth, I would have gone to this woman, and asked her to get somebody to assist me in the presecution, and if she had not been able I would have gone to the fiscal court of this county and requested it at their hands."

An objection to the last statement was sustained by the court, but it was not error for it only showed that the attorney felt incompetent to manage the prosecution by himself. He did not state any fact in the case prejudicial to appellant. There was no error in either of the other two excerpts, unless it be the first and there was nothing in it injurious to appellant, but it was calculated to excite the minds of the jurors as to the extent of crime in the country. This court has held in numerous cases that if the trial, in every other respect was fairly conducted and it appears that no other verdict could have been rendered, the case will not be reversed on account of improper argument. See Hourigan v. Commonwealth, 94 Ky., 520, and O'Brien v. Commonwealth, 89 Ky., 354. In the last case cited the action of the Commonwealth's

attorney was more harmful than in the case at bar, but it was affirmed.

The fourth error assigned has reference to the instructions. The complaint is to the giving of the following instruction, to-wit:

"If the jury believe from the evidence beyond a reasonable doubt, that the defendant, armed with a deadly weapon sought out the deceased for the purpose of en- and with the formed design to kill him or to inflict on him serious injury, and willingly engaged in same up to and with the formed design to kill him or to inflict on him serious injury, and willingly engaged in same up to the time he fired the fatal shot (if they believe he did so) then and in that event the defendant cannot justify on the ground of self defense and apparent necessity unless the jury believe that the defendant had abandoned in good faith his intention to bring on the difficulty for said purpose, if they believe he had such intention, and withdrew in good faith from the conflict before he shot the deceased, if he did shoot him."

It is difficult to perceive any error in this instruction. Counsel quoted an instruction in the case of Brandenburgh v. Commonwealth, 28 Ky. L. R., 1050, which was as follows:

"* * * * * If you shall believe from the evidence beyond a reasonable doubt that the defendant wilfully and feloniously sought and brought on the difficulty in which the deceased was killed and first wilfully and feloniously assaulted or attempted ———— the deceased, and continued such difficulty without abandoning the same, and in so doing made the harm or danger, if any there was, towards the defendant from the deceased, necessary or excusable on the part of the deceased in his own necessary self defense from the accused, in which event you ought not to excuse the defendant upon the ground of self defense and apparent necessity."

They claim that in the instruction in the case at bar the court used the words, "unless the jury believe that the defendant did abandon in good faith his intention." &c. While in the instruction in the Brandenburgh case the court told the jury, "and continued such difficulty without abandoning the same," and they contend that the interpolation of the words "in good faith" in the instruction in the case at bar was prejudicial to appellant. The meaning of the two instructions is in effect

the same, and besides, there was no necessity to embody that thought in the instructions in the case at bar as there was not the slightest pretense in the testimony that appellant even attempted to abandon his intention to shoot Stoner, if he had such intention.

The jury found that it was a case of murder on the part of appellant, and there was sufficient evidence to justify the finding, therfore, the judgment is affirmed.

Whole court sitting.