## Ball v. Commonwealth.

(Decided November 30, 1923.)

### Appeal from Laurel Circuit Court.

1.   Criminal Law—Admitting Evidence in Rebuttal which was Admissible in Chief Not Reversible Error Unless Prejudicial.—The act of the court in permitting the Commonwealth to introduce

in rebuttal matters that should have been presented in chief, and calculated to contradict the testimony of witnesses for the defendants, will not be interfered with on appeal unless prejudicial.

2.  Criminal Law—Matters Not Referred to in Brief Not Considered. —Causes for reversal cited but not referred to or made part of appellant's brief need not be considered.

3.  Homicide—Verdict for Shooting with Intent to Kill Held to Show Jury Not Prejudiced.—In a prosecution for malicious shooting and wounding with intent to kill, evidence held so conclusive of guilt as to show that the jury which returned a verdict of only five years was not prejudiced against defendant.

HAZLEWOOD & JOHNSON for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Affirming.

In May, 1922, during the progress of a trial held in the court house at Pineville, Bell county, a fight arose between spectators attendant thereon. Frank Ball was seriously shot, a nephew of his killed and a man named John Hurst wounded five times.

With the shooting of the latter we have to deal and for whose wounding this appellant, Floyd Ball, was arrested and indicted, charged with malicious shooting and wounding with intent to kill, and later tried at the May term of said court, 1923.

After hearing numerous witnesses and voluminous evidence, the jury returned a verdict of guilty, fixing his punishment at confinement in the penitentiary for five years, from which judgment he appeals after a motion for new trial had been overruled, at which time numerous grounds in support of same were offered, with which we will presently deal.

Floyd Ball, the appellant, was the son of Frank Ball, who was shot in the court house, the first difficulty occurring on the upper floor in and around the court room; and it seems that on the morning of this affair the appellant, who lived at Middlesboro, drove to Pineville accompanied by his brother, Alvy Ball, Tom Manning and other members of his family. They parked their machine near the court house and in close proximity to one of the entrances, and were sitting there when the first shot was fired on the upper floor of the court house.

By their testimony, as well as that of witnesses for the Commonwealth, immediately upon hearing the disturbance, the Ball brothers, Tom Manning and others dashed towards the court house, the brothers entering the lower floor by different doors. Two witnesses for the Commonwealth testified that Floyd Ball ran upstairs toward the scene of the shooting, passing Sam Hurst, who had previously been shot, and immediately turned and commenced firing at him, resulting in his being shot in the back. Hurst states that he does not know who shot him from the rear, but that when he fell forward on the floor at the bottom of the steps Alvy Ball then shot him several times in the arm; that he saw him distinctly while firing; and numerous witnesses, while not seeing the alleged shooting of Hurst by Floyd Ball, state most emphatically that he was seen afterwards with two pistols, one in each hand; and in fact the appellant himself admits that he had come to Pineville that morning with two pistols and had them drawn in the court house, and offered no tangible or possible excuse for his having done so; and it is a significant fact that several of the parties on trial in the court house belonged to the Colston family, between whom and the Balls bad blood had existed covering a lengthy period and having resulted in killings on both sides. Just why Frank Ball, the father of appellant, should have been in the court room at this time is unexplained; but the realization that he was, and had probably engaged in some of the trouble, as indicated by the testimony of appellant, would prove a strong incentive for the brothers to have shot any one seen leaving the place of the disturbance. Another witness for the Commonwealth, who qualified as an expert in the handling of firearms, testified that the pistols found in the possession of appellant had been recently discharged, or at least since they had been cleaned; and, without further detail of the lengthy evidence submitted by the Commonwealth, it would seem that testimony of a thoroughly convincing character and so conclusive as to warrant the jury in its consideration had been offered.

True it is that much testimony was given on behalf of appellant, though some of it might appear colored by ties of friendship and blood, which are ever powerful and conclusive in character when the safety of those for whom we care is in the balance; while other evidence of apparently disinterested witnesses tended to show that ap-

pellant could not have been close enough to the scene of the trouble to have fired the shots in question, and a mysterious stranger who suddenly disappeared was suggested as the possible miscreant, but so incredulous is this theory as to make further comment or discussion of it unnecessary.

Counsel for appellant have endeavored to thoroughly discredit all evidence offered in behalf of the Commonwealth and complain bitterly of the fact that during the testimony of certain witnesses in rebuttal the Commonwealth was allowed to introduce matters that should have been presented in chief and calculated to contradict the testimony of several witnesses for the defense, which they aver the court should have excluded. This is entirely erroneous and is disposed of in section 224 of the Code, note (1), Rebuttal Evidence, "Rulings of court in respect to, will not be interfered with unless prejudicial," and is more fully set out in Tetterton v. Commonwealth, 28 Rep. 146, in which we find the following paragraph:

"The court was right in holding that this statement of the defendant in the examining court might have been proven by the Commonwealth as evidence in chief. But if in fact appellant did make the statement attributed to him by Sparks, the Commonwealth had no cause to anticipate that he would make a different statement on the trial in the circuit court, and for this reason the Commonwealth did prove this by him in his examination in chief and it was within the reasonable discretion of the court to permit it at this time under the circumstances."

And further, in Traux v. Commonwealth, 149 Ky. 699, in an opinion by Judge Nunn, affirming the ruling of the lower court, it is said:

"It is well settled that the trial judge has a reasonable discretion in such case, but there should always be good cause for introduction of testimony out of the regular order, especially where injustice may likely result therefrom."

Numerous other causes for a reversal were cited, which, however, were not referred to or made a part of their brief and need not be considered. Also, five affidavits were filed by appellant, but, after a careful review of these, we can not feel that they are in any sense material. One and two are those of Margaret Hobbs and Irene Hendrickson, the contents of which are incompetent and

immaterial; that of T. J. Williams is cumulative and that of D. M. Bingham and Lawrence Twyman, who testified for defendant, vary in no material way from their evidence in chief. Also numerous affidavits are filed attacking the reputation of John Asher, an eye-witness for the Commonwealth, but no assault whatever is made wherein his reputation for truth and veracity is concerned, and we are now left with the concluding grounds for reversal presented:

7. "Because the jury rendering the verdict in said case was prejudicial to the defendant and its verdict was rendered contrary to law and in violation of defendant's rights."

8. "Because the verdict so rendered by the jury was rendered on account of its prejudice and feelings toward the defendant and was not supported by evidence sufficient to sustain such a verdict or judgment of the court."

After a careful analysis, we feel that these grounds named possess but little merit. There was evidence ample and conclusive to carry this case to the jury and they were the sole judges. No error is complained of in the indictment or instructions given by the court, and evidence of guilt was so conclusive that we feel constrained to say that the verdict of five years at which they arrived was not accompanied by any evidence of passion or prejudice, as complained of, and offered no grounds for a reversal, which finding is supported in the case of Tetterton v. Commonwealth, 28 Rep. 146, in which the court said:

"Considering all the facts and circumstances proven as to the conduct of the deceased at and prior to the time he was killed, as well as the conduct of the appellant, we are of the opinion that he was guilty of the crime of manslaughter, but we think the penalty as fixed by the jury was rather severe. The jury, however, were the triers of the facts."

The judgment of the lower court was affirmed, notwithstanding the court was of the opinion that the judgment was severe, which nowise prevails in this case. In the case of Bell-Coggeshall Company v. Lewis, 28 Rep. 149, the court says, relative to the severity of a verdict:

"This court cannot invade the province of the jury and say the verdict is against the weight of the evidence, even if it be of the opinion that such is the case; it is only where there is no evidence to support the verdict, or

where it is so excessive as to indicate passion or prejudice on the part of the jury, that the court will be authorized to set it aside.''

We feel that the evidence tendered as to appellant's guilt was conclusive, and the judgment is affirmed.

Judgment affirmed.