## Newberry v. Commonwealth.

(Decided January 17, 1928.)

### Appeal from Perry Circuit Court.

1. Homicide.—Commonwealth's testimony that defendant shot his victim in the back of the head when he was walking away from him held sufficient to sustain conviction of murder.

2. Homicide.—In murder prosecution, where state's evidence made case for jury on murder charge only and defendant's evidence showed that shooting was accidental, refusal of instruction on involuntary manslaughter was proper.

3. Homicide.—In murder prosecution, failure to instruct on defendant's right to shoot his victim in defense of his companion was not error, where such instruction was not justified under evidence.

4. Criminal Law.—In murder prosecution, allowing commonwealth witness, who was eyewitness to killing and attended court as commonwealth's witness, to testify first in rebuttal to prove that defendant shot his victim in back of the head when victim was not engaged in the scuffle held within discretion, where such fact had been testified to by other witnesses.

5. Criminal Law.—While practice of allowing evidence in chief in rebuttal is not commended, trial court has discretion therein which, if not abused, will not be reversed because evidence is allowed in rebuttal which should have been introduced in chief.

6. Criminal Law.—In murder prosecution, allowing commonwealth to show that, prior to the killing, the bottle with which defendant struck a companion of his victim contained whisky held not prejudicial.

7. Criminal Law.—Ordinarily, proof of another offense not connected with one for which defendant is being tried is not competent, but if facts showing other offense are so interwoven with present offense that they cannot be separated, it is not prejudicial to allow proof of other offense.

J. K. P. TURNER for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellant, Joe Newberry, was indicted in the Perry circuit court jointly with John Combs and Dill Asher, charged with murder of Lou Banks. A separate trial was demanded, and the appellant was first tried. He was convicted and given a life sentence, but upon his motion for a new trial the verdict of the jury was set aside and he was given another trial. On the second trial he was again convicted and his punishment fixed at life imprisonment, and from that judgment he appeals.

The killing took place at a small village by the name of Karlas, which is a station on the Louisville & Nashville Railroad not far from Hazard. Karlas is situated opposite the mouth of Buffalo creek. The coal camp of the John P. Gorman Coal Company is situated on this creek, while just above the mouth of the creek is the camp of the Diamond Block Coal Company.

The tragedy took place on the 5th day of July, 1926. The appellant is a boy 18 years of age. His companion at the time of the killing, who had been with him for some hours before the tragedy, was Johnny Combs, a boy about the same age. The proof shows that four boys lived in Leslie county and went over in Letcher county to spend the Fourth of July. It was necessary for them to leave the train at Karlas, and they had returned to Karlas on the 5th of July for the purpose of boarding the train on their return trip home. Lou Banks was one of the boys, and Fred Banks, a distant cousin, was another. The other two boys were Charley Bailey and Burley Bailey. The appellant and his companion, Johnny Combs, did not know either of the other four boys, and neither of the other four boys knew either of them. So far as this

record shows Lou Banks, the 17 year old boy who was killed, did not know there was any such boy as Joe Newberry until within a few minutes before he was killed. Neither did Joe Newberry know that there was any such boy as Lou Banks until a few minutes prior to the time that he killed him.

The appellant and Johnny Combs were on the railroad track when Lou Banks and one of the Bailey boys came up with them. There was some cursing and loud talk. The commonwealth established by three witnesses that the Leslie county boys started away and were called back by appellant. When Lou Banks returned to where appellant was, the appellant drew a bottle from under the bib of his overalls and struck Charley Bailey over the head, knocking him down, and rendering him unconscious. When he started to get up Johnny Combs struck him, and he crawled over the embankment out of the sight of the witnesses. There appears to have been a scuffle between Newberry and Lou Banks, but three of the eyewitnesses testified that Banks had turned his back on Newberry and was going away from him when Newberry shot him in the back of the head, the ball coming out in front over his left eye. Just what induced appellant to shoot Banks is not very clearly shown by the testimony of any witness, but that he did shoot him in the back of the head, the wound resulting in his death within less than an hour, is positively testified to by three disinterested witnesses. Fred Banks, who testified for the commonwealth, stated that when Newberry struck the Bailey boy with the bottle, and when Johnny Combs later struck the Bailey boy, he, himself, was struck by some one and that he drew a pistol. About that time Dill Asher, who had not been about before, appeared on the scene and drew his pistol, pointed it at Fred Banks, and told him to drop the pistol which he had. Fred dropped the pistol on the ground. Lou Banks had no pistol and said nothing to any one. When Fred Banks dropped the pistol, he started away, and upon looking back he saw two or three persons reaching for the pistol which he had dropped on the ground. The Bailey boys fully corroborate Fred Banks in his statement that he had the pistol, and that Lou Banks had no pistol.

The appellant testified that he and Johnny Combs had been together during the morning and had been in swimming. They concluded that they would go over to

the home of Dill Asher, as they understood he had some
new records for his victrola. When they were still on
the railroad Lou Banks and one of the Bailey boys came
up and inquired of him whether he had any whisky.
There was some controversy between them, but it
amounted to no more than the use of vile language to-
wards each other. Johnny Combs left them on the rail-
road and went over to the home of Dill Asher. Asher
was not at home and he returned to the boys on the rail-
road, and just at the time he came up to them the appel-
lant struck Charley Bailey with the bottle. Appellant
testified that Charley gave him the bottle and said to him
at the time that he was going to make him get some
whisky, and that in order to avoid being forced to get the
whisky he struck Bailey with the bottle. Johnny Combs
took some part in the difficulty and struck one of the boys.
Lou Banks, according to the testimony of appellant, then
drew a pistol when Asher appeared and compelled him to
drop the pistol, as before stated in regard to Fred Banks.
Appellant testified that both he and Lou Banks under-
took to recover the pistol from the ground, and that both
of them had hold of it, and in the scuffle the pistol was
discharged accidentally, with the result that Banks was
shot. Johnny Combs corroborated the appellant in most
particulars. Dill Asher testified that he came upon the
scene and found Lou Banks with his pistol drawn on Joe
Newberry, and that he pulled his pistol and compelled
him to drop the pistol on the ground, and that both Banks
and Newberry attempted to get the pistol, the ensuing
scuffle resulting in the discharge of the pistol.

Two witnesses testified that when Johnny Combs
went to the home of Dill Asher he inquired for Asher,
and, learning that he was not at home, he asked if his pis-
tol was there and was told that it was not. There was
some evidence that the four Leslie county boys were seen
on the road drinking as they approached the place of the
tragedy, and that they had been drinking was admitted
by them when they testified, although they denied that
they were drunk. There was evidence given by two girls
that they saw the Leslie county boys about an hour before
the killing, and Lou Banks made a threat against Joe
Newberry when one of the girls told him that she had a
date with Newberry for 1 o'clock. Counsel for appellant
does himself credit by stating that he cannot believe the
evidence of the two girls on this point. We fully concur

in his expressed doubt as to the truthfulness of the threat made towards Newberry by Banks.

The commonwealth by the testimony offered showed that appellant shot Banks in the back of the head when he was doing nothing other than walking away from him. The appellant introduced evidence which tended to show that Banks was shot accidentally. The question was for the jury as to whether the killing took place in the manner detailed by the witnesses for the commonwealth, or as detailed by the witnesses for appellant. The evidence is abundant to uphold the verdict of the jury.

Numerous alleged errors are pointed out by appellant in his brief. We have disposed of his contention that the verdict of the jury was palpably against the evidence. He argues that an involuntary manslaughter instruction should have been given. The instruction on accidental shooting was all that appellant could ask. The jury was instructed to acquit him if it believed from the evidence that the killing took place in the manner described by appellant and his witnesses.

It is insisted that the court erred in the self-defense instruction in that appellant was not allowed to shoot Banks in defense of Dill Asher. There is not the slightest evidence to justify such an instruction. Dill Asher appears to have taken no part in the affray other than to compel one of the Banks boys to drop the pistol which he had drawn on appellant. It is urged that the court erred in instructing the jury on the charge of a conspiracy. An examination of that instruction shows that it is not in fact a conspiracy instruction, and in the form in which it was given it cannot be held that it was prejudicial, although it may have been unnecessary.

Another ground relied on is that the court allowed evidence in chief to be offered in rebuttal. Clarence Grimes was an eyewitness and attended court as a witness for the commonwealth. He was not introduced in chief by the commonwealth, but was introduced in rebuttal for the purpose of proving that appellant shot Banks in back of the head when Banks was not engaged in the scuffle. This fact had been testified to by other witnesses. The practice of allowing evidence in chief in rebuttal is not to be commended, but the trial court has a discretion in such matters, and, unless he abuses that discretion, a case will not be reversed because the evidence was allowed in rebuttal when

it should have been introduced in chief. Truax v. Commonwealth, 149 Ky. 699, 149 S. W. 1033.

It is also insisted that it was error to allow the commonwealth to show that the bottle with which appellant struck Bailey contained whisky. It was an offense against the law if appellant had whisky in his possession, and, ordinarily, proof of another offense not connected with the one for which the defendant is on trial is not competent, but if the facts showing the other offense are so interwoven with the offense for which the defendant is being tried that they cannot be separated, it is not prejudicial to allow proof of the facts in the case on trial. Richardson v. Commonwealth, 166 Ky. 570, 179 S. W. 458.

There is some complaint about the argument of the attorney for the commonwealth in presenting the case to the jury, but an examination of the statements made in the argument by the commonwealth's attorney show that he did not transgress the rules of legitimate argument. A consideration of the entire record convinces us that appellant had a fair and impartial trial.

Judgment affirmed.