## Logan v. Commonwealth.

(Decided December 5, 1930.)

A. F. BYRD and NORMAN W. BOWMAN for appellant.

J. W. CAMMACK, Attorney General, and HOWARD SMITH GEN-TRY for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirm-ing.

Indicted for murder, the appellant was convicted of the offense of voluntary manslaughter and sentenced to serve eight years in the penitentiary. From this judgment, he appeals.

The homicide out of which this prosecution arose occurred on election day in 1928. The appellant, a boy about 18 years old, in the early morning of that day, had gotten into an argument with Otis Owens over the possession and ownership of a dog. The quarrel took place in front of a schoolhouse which was being used as a voting place for the Grassy Creek voting precinct. The quarrel waxing somewhat loud, Dennis Stamper, a justice of the peace who happened to be present, admonished the boys to quiet down. About this time James Owens, who was later killed and who was the father of Otis Owens, showed up on the school grounds, and he too intervened in the quarrel. Between James Owens and Stamper the boys were quieted. A little later Russell Logan was heard near the schoolhouse talking in a very loud, if not boisterous, manner over his grievances about the dog. James Owens was not a public officer, but he had been deputized that morning by the deputy sheriff, Chester Gillum, to assist in a liquor raid it was purposed to make later in the day. There is some dispute in the evidence as to whether or not, when Logan began his loud talking, Stamper as justice of the peace told Owens to arrest Logan. Be that as it may, James Owens and Coy Burchett approached Logan and seized him in order to arrest him. There is again a dispute in the evidence as to whether or not they informed Logan he was under arrest. At all events, a struggle ensued in which blows were passed between Logan and Owens. The latter, however, soon subdued Logan and commenced taking him out to the public highway that ran along in front of the schoolhouse. There is another dispute in the evidence as to the manner in which this was done, the preponderance of the evidence tending to show that Logan was

dragged out in rather a violent manner, although at that time he was offering no resistance. There was present on the schoolhouse grounds that morning Frank Logan, who was the uncle of the appellant. About the time of appellant's arrest, Frank Logan was in a toilet back of the schoolhouse and did not know what was going on. As Owens and Burchett were taking Russell Logan out to the county road, Gus Richmond ran around to where Frank Logan was and said: "Frank, run down there right quick, they are beating Russell to death." Richmond did not tell Frank Logan who the "they" were. Without stopping to inquire, Frank Logan seized a brake stick from off a wagon near by and rushed around to the front yard and down to the gate. Just what then took place is in hopeless dispute, although all admit that Frank Logan when he first got down to the gate called out to Owens and Burchett to turn Russell loose. According to the evidence for the commonwealth, Frank Logan when he got to the gate swung with his brake stick at the head of Jim Owens, but missed him or hit him with only a glancing blow. Owens thereupon drew his revolver, a .38, and fired one or two shots at Frank Logan, one of which shots struck him in the neck and came out at the back of the ear. Frank Logan who, save for the brake stick, was as all admit unarmed, then took another swing with the stick at Owens, hit him on the side of the head, and knocked him prone to the ground. In falling, Owens' revolver slipped from his hand. Burchett, who had been holding Russell Logan, then turned him loose to go the assistance of Owens. When Russell Logan found himself free, he reached to where the revolver of Owens was lying on the ground, picked it up, ran over to the side about 20 steps, and then fired the pistol at Owens; the bullet going into the back under the left shoulder, killing Owens instantly. Russell Logan then disappeared down the county road. According to the evidence for the defense, when Frank Logan arrived on the scene and demanded that Russell Logan be turned loose, Jim Owens with an oath stated that nobody could make him turn the boy loose and thereupon drew his gun and fired twice at Frank Logan, and that it was not until Frank Logan had been hit with the bullet that he knocked Owens to the ground. Frank Logan testified that just as Owens fired the second shot at him, Coy Burchett, who was standing behind Owens, also fired towards the witness; the two guns going off so closely together that the

reports from them could not be distinguished. The appellant also introduced witnesses who testified that some strange party whom they did not identify, but who was not Russell Logan, fired a gun at Owens from about the place the commonwealth's witnesses say Russell Logan was standing when they say he fired the fatal shot. It will thus be seen that it was appellant's theory that either Coy Burchett accidentally hit Owens in the back or this stranger killed him. Appellant also introduced evidence to show that the clothing and flesh of Owens were powder burned, indicating that the shot which killed him had been fired in close proximity to him. The coroner testified that there was also a flesh wound in the arm of James Owens occasioned by a smaller caliber gun than that which killed him with the shot in his back. The overwhelming weight of the testimony is to the effect that but three shots were fired, although one or two witnesses think they heard a fourth shot. It is admitted that at the time of his arrest, Russell Logan was unarmed and that if he shot Owens he must have done so with Owens' gun and that was a .38. The proof is that Coy Burchett's gun was a .38 too. Coy Burchett denies that he fired his gun as testified to by Russell Logan and says that it was not loaded that morning because he had no cartridges. There is just no explanation at all in the record as to where the shot which caused the flesh wound in the arm of Owens came from. The coroner testified that the shot in the back killed Owens instantly, and that the wounds in the head caused by the brake stick were superficial in character. He further testified that he found no powder burns on the body of Owens that night, and although the body may have been washed after Owens had been killed, yet had the body been powder burned as testified to by appellant's witnesses, evidence of the powder burns would have remained after the washing, due to the tissues of the body being impregnated with the burnt powder. The coroner is corroborated by Commodore Pollitt, who examined the body soon after the killing and before it had been washed. In this state of the evidence, appellant insists that he was entitled to a peremptory instruction or, if not, that the verdict was flagrantly against the evidence; but in view of the positive testimony that he shot Owens when the latter was upon the ground and helpless, the contention of the appellant has no merit. Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629. It plainly was for the jury to say

whether it believed the commonwealth's testimony or that of the appellant.

It is next insisted that the instructions were erroneous. Instruction No. 1 was one on murder. Appellant was convicted, as the jury specifically stated in its verdict, under instruction No. 2, the one bearing on manslaughter. Hence we need not further discuss instruction No. 1, as appellant was not convicted under it and, even if erroneous, it was not in the light of the jury's action prejudicial.

Instruction No. 2 is criticized because in the indictment wherein Frank Logan and Russell Logan were jointly indicted for this homicide, it is averred that Russell Logan killed Jim Owens by shooting him and that Frank Logan did then and there aid, abet, encourage, and assist Russell Logan in the killing, whereas instruction No. 2 not only authorized a conviction if the jury found the facts to be as averred in the indictment, but also authorized a conviction of the appellant in the event the jury believed Frank Logan did the shooting or killed Owens by hitting him over the head with a club; the appellant being then and there aiding, assisting, abetting, and encouraging the said Frank Logan. Appellant is correct in his interpretation of this instruction, but there was not the slightest evidence that the blow on the side of the head of Owens by Frank Logan killed him. The wounds which the blows made were, according to the testimony of the coroner, only superficial wounds. Further, it was admitted by everybody that save for the brake stick Frank Logan was unarmed and that he did no shooting on this occasion. The only contention in the evidence was whether Russell Logan did the shooting, or Owens was killed by Coy Burchett or by a stranger as above noted. Hence it is plain that in convicting Russell Logan the jury must have believed that he did the shooting, and hence the instruction, though wider than the indictment and evidence justified, was not prejudicial.

It is next complained that in addition to the usual self-defense instruction which was given, the court should also have given an instruction authorizing Russell Logan to kill Jim Owens if he reasonably believed it to be necessary to do so in order to defend Frank Logan from great bodily harm or death at the hands of Owens. But there was no evidence upon which to base such an instruction. If Russell Logan did the shooting at all, he

shot Owens when the latter was unarmed, as Russell Logan well knew, since he had in his possession Owens' gun, and he shot Owens at a time when the latter was lying prone upon the ground, dazed from the blow upon his head and when in a position to do neither Frank Logan nor Russell Logan any harm and at a time when neither of them was in any danger from him. Hence it follows that this instruction was not warranted by the evidence.

It is next contended that the court erred in the admission and rejection of testimony. As to the admission of testimony, appellant complains that the court permitted Arthur Boggs to testify to matters which were in chief after both the commonwealth and defendant had produced their witnesses and at a time when the commonwealth was confined to rebuttal testimony. The facts about this matter are these: Arthur Boggs was a nonresident of the state, was not present in court when the commonwealth was introducing its proof in chief, and did not show up in court until about the time the appellant completed his testimony. Section 224 of the Criminal Code of Practice provides:

"The parties may then respectively offer rebutting evidence only, unless the court, for good reason in furtherance of justice, permit them to offer evidence upon their original case."

In commenting on this section in the case of Howard v. Commonwealth, 227 Ky. 142, 12 S. W. (2d) 324, 328, we said:

"The introduction of evidence in a case must, of course, have some restriction, and the order lies chiefly in the sound judicial discretion of the trial judge; but in the exercise of that discretion it should ever be borne in mind that the supreme object is to elicit the truth. If it appear during the course of a trial that true conditions will be disclosed by permitting the introduction of witnesses, although out of the usual order, it is the duty of the court to permit their introduction."

And in the case of Newberry v. Commonwealth, 222 Ky. 630, 1 S. W. (2d) 1045, 1047, we said:

"Another ground relied on is that the court allowed evidence in chief to be offered in rebuttal. Clarence Grimes was an eyewitness and attended

court as a witness for the commonwealth. He was not introduced in chief by the commonwealth, but was introduced in rebuttal for the purpose of proving that appellant shot Banks in the back of the head when Banks was not engaged in the scuffle. This fact had been testified to by other witnesses. The practice of allowing evidence in chief in rebuttal is not to be commended, but the trial court has a discretion in such matters and, unless he abuses that discretion, a case will not be reversed because the evidence was allowed in rebuttal when it should have been introduced in chief. Truax v. Commonwealth, 149 Ky. 699, 149 S. W. 1033.''

In the instant case, Boggs was the witness who testified that he saw Russell Logan run in and get Owens' gun after the latter had dropped it when knocked to the ground by Frank Logan. This bit of testimony was very important in the effort being made to discover what was the truth about this homicide. The commonwealth had not deliberately held the witness back. He was not in court when the case was called for trial, and being a nonresident, his attendance could not have beeen compelled. As soon as it could after Boggs showed up, the commonwealth produced him as a witness, and we are of opinion that under the circumstances the court did not abuse its discretion in permitting him to testify.

So far as the rejection of testimony for the appellant is concerned, the court refused to allow a witness to testify who had been seated in the courtroom and who had heard some of the defense witnesses testify. The court based its ruling on the fact that the witnesses at the outset of the trial had been ordered excluded from the courtroom. The witness who was rejected was offered by the appellant simply to show that Owens had the general reputation of being a violent and abusive man. The other witnesses whom this witness had heard testify, gave no evidence along this line, and hence it is argued the court abused its discretion when it refused to allow this witness to testify. Without stopping to inquire about this, we find that the appellant established the general reputation of Owens by a number of other witnesses and there was no substantial contradiction of their evidence by the commonwealth. Hence the action of the trial court in excluding this witness, even if erroneous, was not prejudicial.

Lastly it is contended that counsel who was employed to assist in the prosecution was guilty of misconduct in his final argument. Without setting it out in full, we are of opinion that this argument which we have carefully read was fully justified by the facts proven in the record and counsel was guilty of no misconduct in making it.

The judgment of the trial court is affirmed.