## Austin et al. v. Commonwealth.

(Decided Feb. 11, 1936.)

562

C. F. SEE, Jr., H. H. RAMEY, WALTER PRATER, K. C. ELS-
WICK and ELDRED E. ADAMS for appellants.

B. M. VINCENT, Attorney General, and A. E. FUNK, Assistant
Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

On an indictment charging the crime of murder al-
leged to have been committed by the shooting and kill-
ing of Homer Fitch, on a trial before a jury, Andrew
and Eugene Austin were convicted of the crime of vol-
untary manslaughter and each sentenced to the state
reformatory for a period of seven years.

The court admitted in behalf of the commonwealth
the testimony of witnesses identifying a conversation
by telephone of Andrew Austin with his wife concern-
ing Eugene and Charles Austin, their sons, going to the
premises of James Fitch to repair a telephone line on
the day the crime was committed.

The court gave to the jury instructions which have
been approved often by this court, qualifying the right
of self-defense, to which we shall hereinafter advert.

During the progress of the trial, a witness of the Austins, on cross-examination, testified that immediately after the shooting and killing Homer Fitch he examined a pistol which was admitted by the Austins to have been in the possession of Andrew Austin at the time of the shooting and killing Homer Fitch and that it was "hot." Thereupon the Austins requested the court to permit the pistol to be shot in the presence of the jury to demonstrate whether firing it until all of its chambers were emptied would make it "hot" as testified by the witness. The court declined to grant their request.

To the admission of the testimony relating to the telephone conversation of Andrew Austin and his wife, to the qualification of the self-defense instruction, and to the court's ruling on the motion to demonstrate in the presence of the jury the firing of the pistol as requested, the Austins objected; their objections were overruled, to which they excepted. Of these rulings they are here complaining.

A review of the evidence is required to dispose of properly the questions presented for determination.

The shooting and killing Homer Fitch occurred in the evening of December 4, 1933, at the "woodyard" used in connection with the home of James Fitch, on the public highway. The highway is about 20 feet in front of the Fitch home. The Austins resided within one mile of the Fitch home. Andrew Austin at the time was conducting a store near the Johnson county line on the Mayo trail some five or six miles from the Fitch home. James Fitch owned about 103 acres of land on which he resided. A telephone line extended over his property, running from Louisa to Andrew Austin's place of business at Ulysses and to other points, was owned and maintained by Andrew Austin. At the time of the killing, a pole used by the telephone line sat about seven to nine feet from the right of way of the highway in front of the Fitch home near his "woodyard." The insulation on this pole had recently and more than once been broken and otherwise interrupted by some one. The Austins, desiring to discover who was interfering therewith, arranged, on the day of the killing, with two deputy sheriffs to secret themselves within view of this particular pole for that purpose. In

compliance with this arrangement, the deputy sheriffs located themselves in sight of this pole, where they were at the time of the killing.

Eugene Austin was attending school at Paintsville, and on the same afternoon before the killing in a car he went to the upper corner of Fitch's yard, stepped out on the running board, and then moved on. A little later, Eugene and Charles Austin returned in a car to Fitch's home; got out of the car, and Charles put on a pair of "climbers" to climb a telephone pole. He went across the creek, and Eugene remained in the road. James Fitch went to where Charles Austin was and engaged him in conversation. They returned to where Eugene was; then Eugene and Charles "started over in Fitch's Bottom"; Fitch went to where they were, when he discovered Eugene had a shotgun. At the time he went to where they were, his son, Jay, accompanied him. James Fitch stated to them "come back and lets be men." They returned to the highway and informed Fitch they were going to reset the pole at the "woodyard." Fitch and Charles Austin measured from the center of the highway to the telephone pole at the "woodyard" and decided that the pole was 39 feet from the center of the highway. James Fitch objected to them removing it, when they informed him they were going to set it on the right of way of the road by the side of the fence. Thereupon James Fitch "asked them to go and get the law and let it settle it; that if the law said for them to move it," he "was willing to submit to the law." He "was law-abiding and would submit to the law." Eugene and Charles Austin then entered the car and went away. Shortly thereafter Fitch with a teacup went to the home of a neighbor to borrow a cup of coffee. While thereat, Andrew, Eugene, and Charles Austin returned in a car, passing the home at which Fitch was borrowing coffee, going to, and stopping in the highway at, his "woodyard." Andrew Austin got out of the car with a pistol in his hand and walked behind the car. Eugene Austin with a shotgun in his possession threw his feet out onto the fender and remained sitting in the car. Charles went to the telephone pole at Fitch's "woodyard" and climbed it. At that time, Reck, Homer, Jay, Eva Mae, and Dimple Fitch were at the home of their father, and James Fitch was on the highway returning to his home. On arriving at his

home, he entered it, set the teacup on the "fire board," walked out, and told Charles to come down. Then Andrew drew the pistol across the top of the car and said: "I will shoot him, G—— D—— him." Reck Fitch said to Andrew Austin: "Come from behind the car to do it and be a man." Jay Fitch stated: "If you will lay your guns down we will whip the last d—— one of you." Then Andrew Austin began to shoot from behind the car. Reck fell in the "woodyard," mortally wounded. Then Eugene fired a shotgun at him and simultaneously stated: "I will blow your G—— D—— head off." Reck pleaded: "Don't shoot me any more, you have already killed me." At that moment Homer Fitch was running toward the "potato patch," and Andrew Austin announced: "I will kill you, too; G—— D—— you." He fired two shots, one entering Homer's thigh and another his back. The testimony of James Fitch as to the whereabout of Andrew Austin at the time Homer was shot and the act of Homer running away from the scene as he was shot by Andrew is corroborated by the testimony of Jay, Eva Mae, and Dimple Fitch, Edgel, Raymond, and Eskell Boyd, Isel George, Henderson Burton, and G. G. Hankes. If the testimony of these witnesses is to be believed, and this was a matter for the jury, it proves beyond a reasonable doubt that Andrew Austin, while standing behind the car, after Reck Fitch had been mortally wounded, and while Homer Fitch was running away in the direction of a potato patch, shot him in the back, from which he immediately died.

The evidence in behalf of the Austins is that Reck Fitch was in the possession of a shotgun; he pointed it at Eugene Austin and, without firing it, turned, striking Andrew Austin over the head with it, knocking him to the ground, and at about the same time Homer Fitch secured an axe which was at a "chop block" in the "woodyard" and threw it at Andrew Austin while he was on the ground, striking and cutting his ear. The testimony of Andrew Austin was that he was knocked to the ground by Reck Fitch and thereafter until the encounter ended was unconscious. The testimony of Eugene and Charles Austin was that, as Reck Fitch was in the act of striking Andrew Austin with a shotgun, Eugene Austin with a pistol in each hand, shot and killed Reck Fitch, and, as Homer was in the act of

throwing the axe at Andrew Austin, Eugene shot and killed Homer.

The whole of the evidence plainly establishes that Reck Fitch was in the possession of a shotgun and it was broken in the melee either by his striking Andrew Austin with it or otherwise.

The Austins admitted that Eugene was in the possession of a pistol on the occasion of his visit to the premises of Fitch, that another pistol and a shotgun were secured by him and Charles Austin before they went to his premises, and there after they went to the place of business of Andrew Austin, and he with his pistol and they with the shotgun and two pistols went to Fitch's premises, ostensibly to repair a telephone line in front of his home. With this admission from them, the immateriality of the telephone conversation of which the Austins now complain is apparent at first blush. Conceding it to be incompetent, its admission plainly was a harmless error.

The evidence satisfactorily shows that Reck Fitch was shot, had fallen, and was lying on the ground at the time it is claimed Homer secured an axe at a "chop block" and threw it, striking Andrew Austin. It, with equal positiveness, establishes that, notwithstanding the testimony of Eugene and Charles Austin, Andrew Austin did the shooting and killing of both Reck Fitch and Homer Fitch, and that Eugene Austin was present and participating as an aider and abettor. Stacy et al. v. Commonwealth, 221 Ky. 258, 298 S. W. 696. In like manner, it is established that Homer Fitch, after throwing the axe at Andrew Austin, if he did so, not only abandoned the difficulty, but was rapidly running away therefrom at the time he was shot and killed, and neither of the Austins was in any danger whatsoever, at his hands or at the hands of any of the Fitchs at the time he shot and killed Homer. This phase of the evidence authorized and sustains the action of the court in qualifying the self-defense instruction. Hellard v. Commonwealth, 80 S. W. 482, 26 Ky. Law Rep. 38; Lewis v. Commonwealth, 237 Ky. 786, 36 S. W. (2d) 639.

It is only where there is no evidence that the aggressor attempted to abandon his intention to kill or

inflict some great bodily harm on a defendant or another acting with him that it is error to qualify the self-defense instruction. Traux v. Commonwealth, 149 Ky. 699, 149 S. W. 1033.

True it is that, if the Austins were being tried for the killing of Reck Fitch, the evidence as developed in this case would not warrant a qualification of a self-defense instruction as to Reck Fitch, but their right of self-defense as to Reck is entirely different on the proven facts from their right of self-defense as to the killing of Homer.

The Austins argue in their brief that Andrew Austin owned the telephone line on the land of James Fitch and had a right to enter thereon for the purpose of repairing it, and that an instruction should have been given defining their right in this respect. This argument overlooks the evidence showing that the difficulty in which Reck and Homer were killed entirely occurred on the public highway, and their right to enter upon his premises and repair the telephone line in no way justified the commission of the crime on the public highway. Respecting the motion to demonstrate in the presence of the jury the shooting the pistol with which Andrew Austin shot and killed Homer Fitch, if it be conceded that the court should have sustained their motion and erred in refusing to do so, the record discloses that, before the case was closed, the pistol was fired in the presence of a number of witnesses who thereafter testified that the shooting the pistol would not cause it to get "hot." The introduction of this evidence cured whatever error, if any, was made by the court in overruling the motion.

The whole of the evidence clearly established their guilt. We discover no error, and none is pointed out to us, prejudicial to their substantial rights.

Wherefore the judgment is affirmed.