### Harvey v. Commonwealth.

February 24, 1950.

As Modified on Denial of Rehearing May 12, 1950.

Edward P. Hill, Judge.

Joe P. Tackett and Hayes & Wellman for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE LATIMER—Affirming.

Appellant, Dave Harvey, was jointly indicted with Billie Barnett for the murder of Clifford Branham. They were also charged in the indictment of entering into a conspiracy to commit the crime, and in furtherance thereof, one of the defendants, but which one was not known to the Grand Jury, did the cutting and wounding from which Branham died, and that the other unlawfully, wilfully, and with malice aforethought, aided and abetted therein. Appellant was tried separately. He was found guilty and his punishment fixed at confinement in the penitentiary for life.

In proscuting this appeal a number of grounds are listed, only three of which are discussed and urged as grounds for reversal, namely: (1) Admission of incompetent evidence. (2) Error of the trial court in allowing the Commonwealth to introduce evidence impeaching its own witness. (3) Improper argument of prosecuting counsel.

The evidence shows that Dave Harvey and Billie Barnett had been together prior to the alleged killing; that they had been in Flannery's Restaurant in the town of Martin in Floyd County, at which time Dave Harvey had flourished a knife; that they were both under the influence of liquor; that as they left the restaurant, Dave Harvey had an open knife; and that Marie Spurlock, an employee in the restaurant, and also a second cousin of appellant, followed them to the door and begged them to go home. This witness also testified that when Branham got out of his car, which was parked on the same side of the street as the restaurant, and was approaching the restaurant, she saw Dave Harvey hit Branham twice, once with the left hand and once with the right hand, but she didn't know Branham had been cut until she saw the blood.

A number of witnesses testified that immediately after this altercation both defendants ran from the scene. The wound inflicted on Branham was described as a "stab wound" on the left side of his neck which cut the jugular vein and the trachea and came out on the base of the tongue on the left side.

In his defense, Harvey testified that he and Barnett came to town together and got a half-pint of liquor, and with A. B. Crisp went to a picture show; that Barnett left the show and got more whiskey, after which they went to the Flannery Restaurant where they drank two bottles of beer; that both he and Barnett had knives; and that they had shown these knives to each other. He said that as they came out of the Flannery Restaurant, Barnett and Branham got into a quarrel and that Barnett asked Branham if he had seen "his woman." Branham replied: "No, but I guess you have." Branham then said to Barnett: "I had better not catch you with her any more. If I do it will be too bad for you." Barnett then said: "If you think that way about it, we will settle it right here," and Branham put his hand up under his shirt and Barnett then slapped at Branham and put his right hand on Harvey's shoulder and took a swing at Branham with his left hand. Harvey said that he then ran behind the restaurant and that Barnett started to run up the street; that Branham then got ahold of Barnett, at which time Harvey got a coca-cola bottle, which he said he threw across the highway; and then went up to Barnett and Branham and pulled them

apart. Harvey stated that as he and Barnett then went up the street to the show, Barnett said he had cut the boy.

On the basis of the above, Harvey was convicted.

Appellant first complains because Lucy Castle was permitted by the court to testify in chief for the Commonwealth after both the Commonwealth and defense had rested. The record shows that before the court permitted this witness to testify, the Commonwealth made an avowal that counsel for prosecution had not known until just before adjournment of court on the evening before that the witness, Lucy Castle, was a passenger on a bus of which Cecil Meadows was the driver. While not entirely clear, it appears from the record that the driver of the bus, and the driver's wife, and Lucy Castle, were the only persons on the bus; and that the bus had stopped near the scene of this fight. Appellant says that, as Cecil Meadows and his wife had testified, it would have been easy for the Commonwealth to have ascertained the fact that this witness was on the bus, and especially so since Cecil Meadows had testified there was another person on the bus besides his wife, and that because of the failure to use proper diligence to discover this witness, serious objection is made to this irregular method of introducing evidence in chief. It is ordinarily improper to permit evidence in chief after both sides have rested. There are exceptions to this general rule, the chief of which is that good cause must be shown for failure seasonably to introduce the evidence, in which event the matter addresses itself to the discretion of the court. We will not disturb unless there is an abuse of that discretion. The cases cited by appellant address themselves to this question. Reversals were had in them because of failure to show good cause. or failure to offer the testimony at the first opportunity. Consequently, there was an abuse of discretion in permitting the irregular introduction of the evidence. See Williams v. Commonwealth, 90 Ky. 596, 14 S. W. 595; Dalton v. Commonwealth, 226 Ky. 127, 10 S. W. 2d 609.

In Logan v. Commonwealth, 236 Ky. 329, 33 S. W. 2d 25, testimony was introduced in chief for Commonwealth after both sides had rested. It was held that such was within the sound discretion of the court and re-

versal will not be directed unless the trial court has abused such discretion.

We think, in the light of the avowal as made and the cumulative character of the testimony of the witness, the court did not abuse its discretion in this matter.

The next attack goes to the question of impeachment by Commonwealth of one of its own witnesses. Cecil Meadows, who had testified on the first day of the trial, was recalled on the morning of the second day. It seems as though on the first day's examination Meadows did not state positively that he saw Harvey cut the other fellow. He was then asked concerning statements made to the Grand Jury. There were three questions propounded that were particularly objected to. The first was: "And you told your wife something then, and you said: 'I no more than said it until he cut him.' Did you say that to the Grand Jury?" Objection was made and the objection overruled. Meadows answered: "That's right." He was then asked if, in answer to the question "Who cut him," he said, "Harvey." Objection was made there and the court sustained that objection. The third question was: "I will ask you, young man, if it isn't a fact that you saw the defendant, Dave Harvey, cut this fellow's throat?" Objection was made and this objection was sustained.

Section 596 of the Civil Code of Practice provides: "The party producing a witness is not allowed to impeach his credit by evidence of bad character, unless it was indispensable that the party should produce him; but he may contradict him by other evidence, and by showing that he has made statements different from his present testimony."

A clear analysis and construction of Section 596 of the Code may be found in Harvey v. Commonwealth, 287 Ky. 92, 152 S. W. 2d 282, which sets out definitely the exceptions to the general rule against impeachment of one's own witness. It must be made to appear that the testimony as given must have proven prejudicial to the party introducing it, or clearly favorable to the adverse party, and it is not enough merely that the testimony falls short of the expectations of the introducing party. At first blush, it appears as though this might fall within the limitations of the Code. However, upon further consideration of the question, it appears that most likely

the Commonwealth was attempting to show that appellant was the principal instead of an aider and abettor. Under the section of the Code above, as construed in Harvey v. Commonwealth, the Commonwealth could contradict appellant as touching this question by showing that he made statements different from his present testimony. It is noted that objections to two of these questions were sustained. We think this to be competent evidence under the section of the Code above. It is obvious under the indictment that it was not necessary to show that Harvey actually did the cutting in order to convict. By appellant's own admission, and by the testimony of others, he was present and participated in the altercation. He was charged with aiding and abetting, and under this evidence, it was not necessary for him to have been the actual wielder of the knife. There is no merit in appellant's contention in this respect.

Objection is next made to the misconduct of the prosecuting attorney. It is complained that Commonwealth Attorney, in referring to Lucy Castle's testimony, said: "She has no interest in this case; she is from down here in Johnson County and doesn't know anybody in this case." It is stated that as a matter of fact, the prosecutor knew better than this because Mrs. Castle had testified she lived at Manton on Stephens Branch above Martin. It is not highly imaginative to presume that the jurors also knew that Manton was in Floyd County near Martin. The fact is, to jurors who knew that Manton was in Floyd County, and if any attention had been paid to what the prosecuting attorney said in talking about her being from Johnson County, it would have prejudiced them against the prosecuting attorney if they had thought that he was willfully misrepresenting the domicile of this witness. There is no merit in this contention.

Complaint is also registered concerning statements relative to the slapping of Branham and the throwing of the pop bottle, which were distortions and not actually according to the evidence. After all, the jury heard the evidence. If there was an intentional distortion of facts, this again would go more to the prejudice of the Commonwealth than to the defendant. If, after the jury has listened to the facts, an attorney, in argument, deliberately distorts those facts, such conduct is calculated to create in the minds of jurors suspicion, if not possibly a

694

bit of intolerance toward the views of that attorney. The argument is not of that highly inflammatory and prejudicial character as found in Fitch v. Commonwealth, 267 Ky. 646, 103 S. W. 2d 98. We find no merit in this contention.

The judgment is affirmed.