CASE 83—ACTION FOR DAMAGES FOR PERSONAL INJURIES—Oct. 15.

# Louisville & N. R. R. Co. v. Simpson.

APPEAL FROM NELSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS.   REVERSED.

EVIDENCE—WITHDRAWAL FROM JURY—CARRIERS—OUTCRIES OF PASSENGERS—ADMISSIBILITY OF EVIDENCE—FAILURE TO OBJECT—INJURED PERSON—PERSONAL EXAMINATION—EXEMPLARY DAMAGES.

Held: 1. There can be no reversal for the admission of evidence which was withdrawn from the jury by consent of parties, and which the jury was admonished not to consider.

2. The fact that outcries were made by passengers other than plaintiff in the collision in which plaintiff was injured was not admissible in evidence, but, as there was no objection to the ad-

mission of the evidence, there can be no reversal on that ac-
count.

3. Where plaintiff testified that by reason of an injury to her hand
she could not close the hand by voluntary exercise of its
muscles, it was an abuse of discretion not to compel her to sub-
mit to an examination of the hand by physicians introduced
by defendant as witnesses, who testified that they could tell
by such an examination whether the hand was stiffened as
claimed, and whether such condition would probably be per-
manent.

4. Where the evidence presented a case of such negligence that the
jury might be warranted in finding that it evinced a reckless dis-
regard of human life, it was proper to give an instruction au-
thorizing exemplary damages.

JOHN S. KELLY, ATTORNEY FOR APPELLANT.

GEO. S. AND JOHN A. FULTON, FOR APPELLEE.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

Appellee was a passenger on the Bardstown Accommo-
dation (a passenger train operated by appellant on its
Springfield branch) on December 23, 1899. This train was
due to leave Louisville at 4:10 o'clock p. m., but on this
occasion left at 4:16. Within three minutes after it
passed South Louisville, freight No. 13 (a "double header,"
with 49 cars, 35 of which were loaded) pulled out onto the
track, following the passenger; and, it is claimed, in about
11 minutes after the passenger passed it started in the
same direction, being something over two hours later
than its schedule time. The evening was cloudy, and a
mist of rain was falling. The passenger was due to stop
at eight or ten flag stations, and one regular stop before
it would leave the track upon which the freight was follow-
ing it. The freight had no stops to make, and took up
and continued a speed averaging about 30 miles an hour,
and at times as high probably as 35. The pas-

senger was heavily loaded with holiday travelers, and made about all the stops shown in the time card. The freight ran into it at Gap-in-the-Knob station, about sixteen miles south of Louisville. The rear car of the passenger, in which was appellee and a large number of others, was partially wrecked, and appellee claims she was injured in that collision. In her suit for damages she was adjudged to recover on the jury's verdict $3,000.

Two matters of evidence are presented by appellant as constituting errors by the trial court. One was that it was shown by several of the witnesses that a Mrs. Carrothers, who was sitting by appellee at the time of the accident, was killed in this collision; and the manner of her finding by the wreckers, and their efforts in rescuing her body, and the manner of its being fastened in the debris of the wreck, all were shown in this trial. However, the record shows that all of this evidence was, "by consent of the parties," withdrawn from the jury, and they admonished by the trial court not to consider it. It was also shown by some of the witnesses that outcries and screams were made by passengers in this coach when the collision occurred, and that in the darkness great confusion reigned. None of this was objected to by appellant, so far as the record shows. The outcries and exclamations by others than appellee were not relevant matters to go to the jury, but we can not reverse for errors not excepted to at the time.

Another matter of evidence was that on the trial appellee claimed that in the collision her hand was injured, and she was permanently crippled; that because of the injury she could not close two or more of her fingers of that hand by voluntary exercise of its muscles. No other permanent injury was claimed, nor was the injury to that member

apparent to an ocular inspection. Appellee, on the trial, showed the hand to the jury, demonstrating, she claimed, how far she could close the fingers by the use of their muscles. She declared that the leaders and joints of the fingers were stiff and enlarged. One of the witnesses (her physician) testified that he could not tell by an examination of the hand whether it was permanently injured or not; that he would have to rely upon the statement of the patient. Appellee submitted her hand to his examination while he was testifying. Appellant introduced two physicians as witnesses, who testified that they could tell by an examination of the hand, without reference to what the patient said, whether it was stiffened as claimed, and whether such condition would probably be permanent. Thereupon appellant asked each of the witnesses to then and there examine appellee's hand, and state to the jury whether the fingers were stiffened as claimed, and whether such injury was permanent. Appellee declined to permit the witnesses to examine her hand, and the court overruled appellant's motion to compel her to do so. The right to demand such a personal examination of the injured member of one suing for permanent personal injuries was first before this court and decided in Electric Line Co. v. Allen 102 Ky., 551 (19 R. 1659) 44 S. W., 89). We then held that the weight of authority was to the effect that "such physical examination may be demanded in cases where discovery of the truth will more likely result with than without the examination, and the end of justice be thereby better subserved." The rules of practice governing such examinations were also declared in that case, providing, among other things, that the ordering of such an examination was within the sound discretion of the trial judge, but such discretion was reviewable on appeal. In this case the in-

jury sued for was not apparent. Whether it existed in fact was disputed. To permit the plaintiff to testify that the member was injured and that the injury was permanent, and to deny other competent witnesses, who are especially skilled in treating such injuries, an opportunity to examine the hand, and to demonstrate, if they could, that it was not in fact injured at all, was an abuse of discretion, which, it was said in the Belt Line Co. v. Allen case, was lodged with the trial judge. And for that error the judgment must be reversed. As the case is returned to the circuit court, it may not become necessary to pass upon whether the verdict was excessive, as that question may not occur after another trial. We are of opinion that this case is one authorizing the submission of the question to the jury whether exemplary damages should be awarded. For it presents a case of such negligence that the jury might be warranted in finding that it evinced a reckless disregard of human life aboard the passenger train by the trainmen in charge of the freight.

The case is remanded for proceedings not inconsistent herewith.