## Louisville & Nashville R. R. Co. v. Cox.

(Decided December 7, 1911.)

Appeal from Ohio Circuit Court.

1. Master and Servant—When There is a Choice of Methods of Doing Work, the Master Should Select the Safer One.—When a master directs work to be done in a way that is dangerous, when it is practicable to have it done in reasonably safe way, he is liable to a servant who is injured by the unsafe and dangerous conditions which he has without necessity created, unless the danger is obvious to the servant.

2. Same—Master May Make Choice Between Methods.—When there are one or more methods by which work may be done, the master may select either; but, where one is reasonably safe, and the other is not reasonably safe, the master must adopt the one that is reasonably safe, or assume the responsibility.

3. Same—Assumption of Risk by Servant.—When the place at which he is engaged is as safe as the conditions of the labor will permit, the servant assumes the ordinary risks of the employment; but when he is acting under the eye of the master, and by his direction, he does not assume the risk attending work that is being performed in a more dangerous method or manner than is necessary, unless the method employed is so obviously dangerous that no person of ordinary prudence would undertake it.

4. Same—Assumption of Risk by Servant.—An inexperienced servant, who does not understand or appreciate the danger, and it is not obvious, has the right to rely on the judgment of his foreman, and is not generally required to assert his opinion against that of the foreman.

5. Same—Fellow Servants.—The fellow servant doctrine should not be extended to embrace a situation in which one servant is injured by the accidental slip of another, when both of them are performing the duty assigned under the immediate direction of the master, in an employment made dangerous by his failure to adopt a safer method.

6. Same—Fellow Servant Doctrine.—When the injury results rather from the dangerous manner in which the work is being done under the direction of the master, than from the negligence of a fellow servant, the fellow servant doctrine cannot be invoked to relieve the master from liability.

7. Same—Evidence—Competent to Show that Plan of Work is Dangerous.—When there are two ways of doing work, one reasonably safe and the other dangerous, it is competent to show that the work is being done according to the dangerous method.

8. Evidence—Res gestae—Opinions.—While appellee and others were engaged on top of an abutment, the remark of a bystander that "you had better watch out, you will kill somebody down there directly," not addressed to any particular person, and that was not heard by any of the men engaged in the work, was not competent as a part of the res gestae, although a moment afterwards an accident happened that resulted in injury to one of the laborers.

9. Evidence—Expression of Opinion by Bystander.—If a bystander, who is qualified to speak, expresses an opinion that the work is being done in a dangerous manner, and the foreman in charge

hears the statement, it will be competent against the master, upon the ground that it called his attention to the peril of the situation and put him upon notice to be careful.

10. Pleading—Effect of Failure to Deny Plea of Contributory Negligence—Practice.—If the plea of contributory negligence is not denied, the defendant is entitled to judgment on the pleadings; but, unless a motion for a peremptory instruction is made after the pleading making this defense has been filed, the fact that it is not denied will not be available.

GLENN & SIMMERMAN and BENJ. D. WARFIELD for appellant.

HEAVRIN & WOODWARD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee while engaged as a laborer in the employment of the appellant company received injuries, caused as he alleged by its negligence, and, in an action for damages, he recovered Seven Thousand Dollars.

The first ground urged for reversal of the judgment is that the motion for a judgment notwithstanding the verdict should have been sustained, because the plea of contributory negligence presented in an amended answer was not controverted of record or denied by pleading. The record shows that the petition was filed in December, 1909, and the answer in April, 1910. The answer did not contain any plea of contributory negligence. In May, 1910, the trial was entered into, and after the evidence for appellee had been concluded, and during the introduction of testimony for appellant, it offered to file an amended answer, to which objection was made, and this amended answer, which for the first time set up the plea of contributory negligence, was not then permitted to be filed. After the evidence was concluded, the appellant moved the court to instruct the jury to return a verdict in its favor, which motion was overruled. After overruling this motion, which was not again renewed, the court permitted the amended answer over the objection of the appellee to be filed, and then instructed the jury— the instruction including the subject of contributory negligence. When the verdict was returned, and before judgment was rendered, the appellant made its motion for a judgment notwithstanding the verdict, which was overruled. It appears from affidavits that it was agreed at the time it was filed that the affirmative matter in this amended answer should be controverted of record, and further shown that the court permitted it to be filed upon

terms that it should stand controverted of record, but the clerk by oversight failed to enter the order.

In Louisville Railway Company v. Hibbett, 139 Ky., 43, we had occasion to consider the effect of the failure to deny a plea of contributory negligence. In that case the original answer in a separate paragraph pleaded this defense, and at the conclusion of the testimony offered for the plaintiff, the defendant moved the court to instruct the jury to find for it, but this motion was overruled, and again, at the conclusion of all the testimony, a similar motion was also made, and also overruled. In that case we said that the motion for a peremptory instruction should have been sustained, as under the pleadings at the time the motion was made the appellee was not entitled to recover. But, in this case the motion for a peremptory instruction based on the ground under consideration was properly overruled, because the answer pleading contributory negligence had not then been filed. We think that if it was desired to take advantage of the failure to deny this pleading, that a motion for a peremptory instruction should have been made after it was filed, and if then made should have been sustained by the court. We so ruled in Mast v. Lehman, 100 Ky., 464. In that case the petition was fatally defective, and after all the evidence was in the defendant moved the court to peremptorily instruct to find for the defendant, which motion was overruled. Afterwards, the court, upon motion, entered a judgment for the defendant, notwithstanding the verdict for the plaintiff, upon the ground that the petition did not support the verdict. In holding that the court erred in this, we said:

"At the conclusion of the trial the defendant moved the court to peremptorily instruct the jury to find for the defendant. This motion of defendant should have been sustained by the court and would have been sustained if the court had been aware of the true condition of the pleadings. * * * If the court had sustained this motion, as it was clearly his duty to do, it would necessarily have brought to the attention of the plaintiff the defense which had been so carefully concealed from the very beginning of the case; and before the submission of the case to the jury, he would have had an opportunity to have offered an amendment curing the defects in his petition, which in furtherance of justice it would have been the duty of the court to have allowed to be filed."

It is not, of course, required that counsel shall assist

his adversary in the practice of his case or protect him from the consequences of his oversight or negligence; but, when a pleading setting up this defense is filed at the very close of the trial, and there is no motion subsequently made before verdict and judgment that would call the attention of the court or the attention of adverse counsel to the pleading, we are not disposed to rule that the failure to controvert it should be allowed to defeat the ends of justice. It is true as said in the Hibbett case that unless the plea of contributory negligence is denied, it must be taken as true. But, when such a plea is filed under circumstances like those disclosed by this record, the party seeking to rely on the plea must show that he has observed every technical rule of practice necessary to preserve his right to raise this question for the first time after there is a verdict against him. And so, if counsel for the appellant desired to save their right to make this question after verdict, they should have made a motion for a peremptory instruction after the plea was filed.

The next question raised is that the appellant was entitled to a peremptory instruction, because (1) no actionable negligence was proven against the appellant entitling the appellee to recover; (2) appellee assumed the risk of doing the work as it was being done, and must bear the burden of any injury sustained; and (3) if there was negligence on the part of any one engaged in the work at the time of the injury, the negligence was that of a fellow servant, for which there can be no recovery. These grounds for reversal make it necessary that we should examine with some care the evidence.

At the time he was injured, the appellee was about twenty-seven years old, and had been working for the appellant company about a month before the accident occurred, as a common laborer assisting in the construction of a bridge it was building. He had no particular duty to perform, but did any kind of work—such as common laborers do—as he was directed by the foreman in charge. On the day he was injured, he was directed by the foreman, Rawlinson, to assist some other men in arranging iron shoes on top of a concrete abutment to hold the iron work of the bridge. The top of this abutment, which was about seventeen feet from the ground, was some seven feet wide and fifteen feet long—the top being concreted and smooth. It was necessary to place on this concrete surface two iron shoes that weighed some three

thousand pounds each. Before Rawlinson came to the
abutment, the laborers, including appellee, with the as-
sistance and under the direction of Howard and Fulker-
son, sub-foremen, had put in position one of the shoes.
When Rawlinson came, he undertook the superintend-
ence of the work of placing in position the second shoe,
and it was while engaged in this work that appellee was
injured. It appears that the safe method of putting
these shoes in place would be to handle them with a
machine called a traveller, but the traveller was not con-
venient or available at this time; and so the first shoe was
put in proper place by being moved around on three
large pieces of timber, which was a reasonably safe
method. But when under the direction of Rawlinson
they came to put in the last shoe, only one timber was
used to rest the shoe on while it was being moved
around. As the men were attempting, under the
immediate direction and orders of Rawlinson, to
move the shoe around on the single timber on
which it was resting, the iron bar, with which
Fulkerson was assisting to hold the shoe in place, slipped,
and when the pressure of the bar was removed from the
shoe, it tilted and rolled or fell off the abutment, carry-
ing Cox, who was at the place he was directed to be by
Rawlinson, with it to the ground.

The work in which Cox was engaged was of course
dangerous, as is all work of this character, but it was not
what might be called an obviously or imminently danger-
ous employment, the danger attending it depending very
largely upon the manner in which the work was done. If
proper care was taken in handling the iron shoe, there
was little danger of accident, and the increase in danger
kept pace with the lack of proper management in the
methods employed. It is shown by the evidence that
there were other methods of doing the work that would
have made it less dangerous than the way in which it was
being done, and that it was entirely practicable to have
employed at the time Cox was injured these less danger-
ous methods, one of which was to use three timbers, as
was done in placing the first shoe. It is further shown
that Cox had little or no experience in this kind of work,
and took no part in it except to go and do as he was di-
rected by the foreman in charge, and it is fair to assume
that he would have escaped injury except for the im-
proper and dangerous manner in which the work was be-
ing done. It is true, as we have frequently written, that
when the implements and machinery with which he is

working are reasonably safe and the place at which he is engaged is as safe as the conditions of the labor will permit the servant assumes the ordinary risks of the employment. But this assumption of risk is in all conditions and under all circumstances much minimized if the foreman is present directing the work and the men do as they are directed by him. As was said in City of Owensboro v. Gabbert, 135 Ky., 346:

"When the master is present, the doctrine of equal knowledge and assumed risk that is sometimes invoked in cases like this to relieve the master should be sparingly applied. The position of the two is very different, and out of this difference grows the right of the servant to depend on the master if he be present directing the work, as he has a right to presume he will warn him of danger and save him from needless exposure to injury or death."

We are not willing to say that the servant, acting under the immediate eye of the master and by his direction, assumes the risk attending work that is being performed in a more dangerous method or manner than is necessary. In other words, where there are two or more ways of doing a thing— one being reasonably safe and the other dangerous—and it is practicable to do it in either way, and the master directs that it shall be done in the dangerous way, the servant acting under his direction and orders does not assume any risk unless the method employed is so obviously dangerous that no person of ordinary intelligence would undertake it. When the master selects a dangerous way of doing the work, when a safe way is entirely practicable, the general rule is and should be that the master and not the servant assumes the risk of injury to the servant. The servant is not ordinarily to be charged with the assumption of risks unnecessarily put upon him by the master, nor should he be required to bear the burden of accident that might have been avoided by the exercise of reasonable care on the part of the master. Appellee, who was inexperienced, did not understand or appreciate the danger that might attend the work if done according to the dangerous method. He had the right to believe that Rawlinson, who was in charge, was both competent and careful. He had the right, under the circumstances to rely on his judgment, and was not required by the exigencies of the occasion to put up his opinion against that of the foreman.

Indeed, this work, although in a sense or degree dangerous, was not so dangerous as to attract uncommon attention. The danger was not what might be called obvious. The thing that made it dangerous was the manner in which it was ordered to be and was being done, and evidence that there were other safer methods of doing it, was competent. Warren v. Jeunesse, 122 S. W., 862. The whole case rests on the proposition that when the master directs the work to be done in a way that is dangerous, when it is practicable to have it done in a reasonably safe way, he is liable to a servant who is injured by the unsafe and dangerous conditions that he has without necessity created. We do not hold that the master cannot adopt any one of two or more plans or methods of doing work, or that he may not make a choice between methods. What we do hold is that when there are two ways—one reasonably safe and the other not reasonably safe—and it is practicable to do the work according to either method, the master if he wishes to rely on the doctrine of assumed risk must adopt the one that is reasonably safe. We are well satisfied that the court did not err in refusing the peremptory instruction.

Nor should the case go against the appellee upon the ground that the accident resulted from the fact that a crow-bar in the hands of a fellow servant slipped at a critical moment, thereby causing the iron shoe to tilt and fall. The fellow servant doctrine is only applied in few cases, Louisville Ry. Co. v. Hibbett, 139 Ky., 43. It should not be extended to embrace a situation in which one servant is injured by the accidental slip of another, when both are performing the duty assigned to them under the immediate direction of the master in an employment made dangerous by his failure to adopt a safer and equally practicable method of doing the work. If the safer method had been adopted, and the servant's crow-bar had slipped, as did the one handled by Fulkerson, no serious consequences would have resulted. The accident and injury followed as a consequence of the dangerous manner in which the work was being done rather than from the negligence of a fellow servant, and so the fellow servant doctrine cannot be invoked to relieve the master from liability. The court properly refused an instruction submitting the issue that the appellant was not liable if his injuries were caused by the carelessness of a fellow servant.

At this point we may add that the appellant has no

just cause of complaint as to the instructions. They are fully as favorable as the law authorized.

Nor are the damages excessive. The appellee was permanently and seriously injured. He not only suffered great pain, but his earning capacity has been greatly and permanently diminished.

We must, however, reverse the judgment on account of an error in the admission of evidence. H. P. Addington, introduced as a witness for the appellee, testified that he was a bridge carpenter in the employ of the appellant company, but was not and had not been engaged in placing the iron shoes on the abutment in question. That a few minutes before the accident—having finished his work at another place—he came to a point about eight or ten feet from where appellee and the others were engaged. Over the objection of counsel for the appellant he was permitted to say that just a moment before the accident he was standing looking at the work, and remarked, "You had better watch out, you will kill somebody down there directly." "If you dam fellows don't watch out, you will kill somebody." Asked who he was talking to, he answered, "Anybody that might hear me." There is no evidence that Rawlinson or any of the laborers engaged in the work heard the remarks of Addington; nor is it shown that he spoke in a tone of voice so loud that Rawlinson could have heard what he said. The appellee was asked "Did you hear any one say shortly before you slipped and fell, in speaking to Mr. Rawlinson or Mr. Fulkerson, to watch out, that they were going to get a man hurt down there?" But there was objection to this question, and no avowal of what the answer of the witness would be. But, if appellee had heard the remarks made by Addington, and had offered to testify as to what he said, his evidence would not have been competent, unless there was evidence showing that Rawlinson also heard the remarks. Addington was a mere bystander, and the fact that his exclamations were made immediately before the accident did not make them competent as a part of the res gestae. They were merely expressions of opinion on his part. It was of course competent for Addington to describe what he saw and did; it was also admissible after he had qualified himself as an expert to say whether or not the work was being done in a proper manner or in a reasonably safe way; but his exclamatory remarks served no purpose except to prejudice the case for the appellant. That this evidence

was prejudicial in a high degree, we have no doubt. It fixed on the mind of the jury the impression that the work was being done in a very reckless way or else Addington would not have made the remark he did. The rule in this State is that declarations which would otherwise be incompetent, to be admissible as part of the res gestae must be made by one of the actors in the affairs contemporaneous in point of time with the principal transaction under consideration, be made at or near to the place of its occurrence, and illustrate or explain how or what caused it to happen. Louisville Ry. Co. v. Johnson, 131 Ky., 278, 20 L. R. A., n. s., 302. In Shadowski v. Pittsburg Ry. Co., 226 Pa. St., 537, 29 L. R. A., n. s., 302, the Supreme Court of Pennsylvania had before it the precise question here presented. In that case the action was brought to recover damages for injuries to a child that was injured by a street car. It appears from the opinion that on the trial, a witness for the plaintiff "in no way connected with the occurrence, either as actor or participant, was permitted to testify over objection to a voluntary profane exclamatory remark made by himself prior to the happening of the accident, and to no one in particular. The remark was not made in the presence of the motorman, or conductor, or injured child, or other person standing by at the time or immediately after the accident occurred. The witness was on the sidewalk returning from his work, saw the car rapidly approaching while the little girl was running or playing on the track, and made the remark in question. It was offered and admitted as part of the res gestae, and this has been assigned as error." In holding this evidence incompetent, the court said: "In the case at bar, the exclamatory remark did not emanate from the act nor did it have any casual connection with it. It was not made by an actor or participant or by any one connected with the occurrence. It was made by a person walking on the pavement, a considerable distance from the point of accident, who saw a car approaching and noticed a little child on the track. It was not made after the accident, but before it happened, and not by any one concerned. * * * We find no case in our reports which properly understood can be construed as an authority for the admission of this testimony as part of the res gestae. It would be a dangerous precedent to establish and would open the door wider than has yet been done for the introduction of this kind of evidence. It should have been

excluded on both reason and authority, and it was error not to do so.''

If there was evidence that Rawlinson, the foreman, had heard the statements, they would be admissible—not as a part of the res gestae but upon the ground that it was notice to him by a person qualified to speak that there was danger in doing the work as he was having it done. They would have come in the nature of a warning to be careful; would have called his attention sharply to the peril of the situation. And if he persisted in the same course after being thus reminded of the danger in pursuing it, it would show that he was acting with reckless disregard of the safety of those engaged under his supervision, and be competent under the rule that when the master knowingly and carelessly puts the servant in peril, he assumes responsibility for any injury that may happen to him. But, treated merely as an expression of opinion that was not brought to the attention of the actors, it was nothing more than hearsay evidence of the most objectionable character. If opinions expressed by every passerby, adverse to one of the parties, is to be admitted, there is no reason why opinions expressed favorable to him should not also be admitted, and if this practice was allowed, it is manifest that there would be no end to the different views that would be exploited before the jury in almost every case of this character that came up, as there are so many persons who find time to express opinions as to the manner in which work they have opportunity to observe is being done. But counsel for appellee insists that the evidence was competent as a part of the res gestae, and in support of this proposition refer us to the case of Louisville & Cincinnati Packing Co. v. Samuels, 22 Ky. Law Rep., 979. In that case Samuels, a deck-hand on a steamboat, was ordered to walk out on a long narrow plank from the deck of the boat to the wheel, and while on the plank in company with other of the deckhands, the plank broke precipitating Samuels into the water, where he was drowned. In a suit to recover damages, the administrator was allowed to prove by one witness ''that just before the plank broke, some one hollered 'look out, that plank is cracked;' '' and by another, that he heard a man named Points, who was an ash-hauler on the boat, make this exclamation; and just at that time the plank snapped. Another witness who also testified to this exclamation of Points, was allowed by the court to state that immediately after the plank

broke, and while the men were in the river, Points said: "I knowed them fellows would break that plank with all of them on it, because it cracked with four of us; I didn't think about telling you all right away." The court held that the first statement was competent as a part of the res gestae. Although the opinion does not state the facts very fully, it appears from an inspection of the record that the exclamation before the plank broke was heard by the mate in charge of the deck hands and the other men, and this fact made it admissible, but, critically speaking, not as a part of the res gestae. As to the other declaration, the court held it incompetent but not prejudicial.

We have not been referred to any other authority supporting the competency of the declarations made by Addington; and the Samuels case does not authorize its admission, as a part of the res gestae.

For the error in the admission of this evidence, the judgment is reversed, with directions for a new trial in conformity with this opinion.