## Howard v. Commonwealth.

(Decided December 21, 1928.)

144

FAULKNER & FAULKNER for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

On July 16, 1928, Mrs. Docia Combs, met her death from a pistol wound, and on the same day the appellant, Mrs. Nannie Howard, was indicted for her murder and brought to trial ten days later. A judgment sentencing her to imprisonment for life was the result.

This unfortunate tragedy occurred at Lothair, a mining town, and arose from a neighbor boy having fired a BB rifle into the yard of the deceased, the shot striking her sister-in-law. The boy handed the rifle to the 18 year old son of the appellant, who was blamed for the mischief. A quarrel ensued between this son, Rex Howard, his mother, and the deceased, the details of which need not be stated. Throughout the quarrel, Mrs. Combs was the most belligerent of the three.

Several hours later, shortly after noon, when Mrs. Howard went to her door, it is shown that the deceased renewed the quarrel by accusing the appellant of having told the contents of some letters which she had shown to her some time previously. This quarrel became rather violent, and the deceased with profanity declared she had a good gun and "was going to shoot somebody's brains out," and otherwise boasted of her intentions and prowess. One of the neighbor women led her into the house. About this time the appellant intercepted a deputy sheriff who was passing, and told him of the trouble, and

he advised her to secure a warrant for the arrest of Mrs. Combs.

It appears that during the interval between the quarrels the appellant went to the home of a neighbor, Mrs. Darlin, and, finding no one there, secured a pistol from a bureau drawer and took it home with her.

Shortly after this second quarrel, Mrs. Combs, with some others, went bathing in the river close by. During this time the appellant walked over to a neighbor's house, and, upon being asked if she and Mrs. Combs had not had trouble, responded that she had taken more off of those women that day than she intended to take. Mrs. Howard returned home about the time Mrs. Combs came from the river, wearing a gingham dress in which she had been in bathing, with a towel wrapped around her body. It appears that the appellant's kitchen was on the street being traveled by the decedent, and her kitchen door opened into a little yard on which Mrs. Combs' house fronted. The evidence of the commonwealth was that, as Mrs. Combs reached the yard, Mrs. Howard came out of her door with a pistol, and, pointing it at Mrs. Combs, snapped it, and then dropped it to her side; whereupon an eleven year old boy named Parnelle Allen ran to her and grabbed the pistol, trying to take it away from her, but, when Mrs. Howard told him to get away, he left hurriedly. Then she and the deceased struggled over the pistol, and Mrs. Howard shoved her away and fired, the bullet striking her back of the right ear, from which wound she died in a short time.

The evidence of the appellant and her witnesses was that, just before going to the river, the deceased was on her porch with a bath towel around her and dancing, and said, ''I am dancing here but will be dancing in jail tonight;'' that when she came up from the river the towel concealed her right hand, and, as she passed the window of the kitchen in which the appellant was at work, she said, ''Mrs. Howard, God damn you, I am coming in on you;'' whereupon Mrs. Howard got the pistol and started out to protect herself, as she said, and then Mrs. Combs again cursed her and said when she got in the house and got her gun she was going to kill her; whereupon the appellant replied, ''Mrs. Combs, we want to settle this without any guns.'' The boy, Parnelle Allen, ran up and snatched the pistol, and, thinking the little boy might get shot, she threw out the cylinder and started to turn it up so the cartridges would fall out. Then, the

appellant says, Mrs. Combs grabbed the pistol, and said, ''I will send you to hell with your own damn gun;'' and, as they scuffled for the weapon, it went off while they both had hold of it. The appellant testified that she had no ill will toward the deceased except that, when she threatened to come into her home, she flew into a passion and went out to protect herself and children; that when she saw Mrs. Combs was unarmed she let down the weapon and was trying to unload it, when it was seized first by the boy and then by the deceased. She denied having snapped the pistol unless it snapped while the boy had hold of it.

Appellant's counsel has filed a 95-page brief assigning numerous grounds for reversal of the judgment, including criticism of the instructions in several particulars. The instructions fairly presented the law of the case, and the complaints as to them are without merit. Counsel is especially insistent that an instruction on the defense of the home should have been given. The facts of the case did not warrant such an instruction, as there was no attack being made on her home, but, according to appellant's own evidence, it was on her personally, and the court has several times held that in such cases it is not proper to instruct the jury as appellant here insists should have been done.

There are, however, a number of errors in the admission and rejection of evidence. Some of them are of an inconsequential nature, and others of a higher degree, but not of sufficient importance to warrant a discussion. Perhaps the most serious error is that in the testimony of Nora Sexton. She was sick in bed at her home two or three doors away, and testified that her attention was attracted by hearing ''a woman holler to Mrs. Howard and telling her not to shoot Docia.'' Upon being pressed by the court to state the exact words, the witness said: ''Before I got out of bed I heard them say not to shoot Mrs. Combs; they said Lord have mercy, Mrs. Howard, don't shoot her.'' It appears from the record that there was at least one house between witness' home and where the trouble occurred, but she states she saw Mrs. Combs on the ground and the appellant walking away with a pistol. It is the rule in many jurisdictions to admit in evidence declarations of third parties and bystanders when made under conditions which characterize them as part of the res gestæ. But, whatever

may be the rule elsewhere, this court is committed to the doctrine that such evidence is inadmissible. If the declarant was a participant in the affair, whether it be in a civil suit or criminal prosecution, and such statements appear to have been unpremeditated and spontaneous exclamations connected with a relevant act, they are admissible, but not otherwise. This character of evidence is rejected as being hearsay, and the particular testimony admitted here bears not only that burden, but the vice of opinion evidence as well. The exclamation of this unknown woman carried the implication that she was of the opinion that the appellant was then and there about to shoot the deceased. It did not have the sanction of an oath, nor was opportunity given for cross-examination of this unidentified person. The appellant claimed that, when she saw the deceased had no weapon, she lowered her pistol, and it would not have been fired except for the scuffle in which it was accidentally discharged. In other words, her defense was that it was an accidental killing. The effect of an error, whether prejudicial or not, must be gauged by its substance, by its relation to other evidence and the peculiar facts and circumstances of each case. In this connection there should be a distinction drawn between declarations of a fact and declarations implying a conclusion opposed to a defense presented. It is conceivable that under some circumstances, when a witness in describing an occurrence testifies to what he or another said by way of admonition or warning in the presence of the defendants and other participants, it would be harmless, but it must be considered otherwise when some one some distance away from the scene and not in sight of it testifies to a declaration by some other person not a participant, without being able to testify as to the entire immediate transaction. It is not justice to jeopardize a defendant's life and liberty by that kind of evidence.

The rule rejecting this character of evidence was first established in this jurisdiction (so far as our search reveals) by an opinion of Judge Lindsay, in Bradshaw v. Commonwealth, 73 Ky. (10 Bush) 576, in which it is said: "We are aware of no case in which it was held that the cries or exclamations of persons in no way connected with the main fact were admissible as part of the res gestæ. If either party is desirous of making available the facts known to such third persons, they must be put

148

upon the witness stand to prove not what they said at the time of the transaction, but what they then saw or heard. (1 Greenleaf on Evidence, section 108; Roscoe's Crim. Evidence, pp. 20, 21; 1 Taylor on Evidence, section 531.)''

Subsequent cases in which the doctrine was approved are: Werner v. Commonwealth, 80 Ky. 387; French v. Commonwealth, 7 Ky. Law Rep. 747; Kaelin v. Commonwealth, 84 Ky. 354, 1 S. W. 594, 8 Ky. Law Rep. 293; Stroud v. Commonwealth, 19 S. W. 976, 14 Ky. Law Rep. 179; L. & C. Packet Co. v. Samuels, 59 S. W. 3, 22 Ky. Law Rep. 979; Omer v. Commonwealth, 95 Ky. 353, 25 S. W. 594, 15 Ky. Law Rep. 694; L. & N. R. Co. v. Simpson, 111 Ky. 754, 64 S. W. 733, 23 Ky. Law Rep. 1044; L. & N. R. Co. v. Carothers, 65 S. W. 833, 66 S. W. 385, 23 Ky. Law Rep. 1673; Kennedy v. Commonwealth, 100 S. W. 242, 30 Ky. Law Rep. 1063; Louisville R. Co. v. Johnson, 131 Ky. 277, 115 S. W. 207, 20 L. R. A. (N. S.) 133; L. & N. R. R. Co. v. Cox, 145 Ky. 716, 141 S. W. 59; L. & N. R. R. Co. v. Sinclair, 171 Ky. 562, 188 S. W. 648; Logan, etc., v. Commonwealth, 174 Ky. 80, 191 S. W. 676; Hall v. Commonwealth, 217 Ky. 518, 289 S. W. 1102.

In Stroud v. Commonwealth, supra, the defendant sought to prove that some one exclaimed, ''Look at Rose (the deceased); he is coming on to Stroud with a knife,'' and the court excluded it. The accused was relying on self-defense, and, while the rule announced in the Bradshaw case was approved, it was further held: ''If, however, the statement was made within the hearing of the accused, and just before or as he fired at the deceased, then it was competent as bearing upon the bona fides of the act. He was defending upon the ground that the killing was done in self-defense. Whether he had reasonable grounds to believe he was then in danger; whether he acted prudently, in good faith, and under a reasonably grounded fear of harm to himself—were matters in issue; and if the statement was made as above indicated, it was competent evidence to illustrate them.''

The difference between that case and the one at bar is obvious, as the exclamation there bore on the question of the reasonableness of the defendant's ground to believe his life was in danger.

In Kennedy v. Commonwealth, supra, an eyewitness testified that a young child of the deceased was screaming and crying, ''Don't shoot pap,'' and the evidence was held properly admissible. At first impression that would

appear analogous to this case, but there the declarant was identified, and the witness testified to seeing the entire transaction, in which it was shown the child evidently tried to prevent the shooting, and the court held "in that sense he was a participant, though a peaceable one, in what occurred."

We do not cite others in the line of cases where the declarant was acting in concert or participating in some way with the parties to the transaction, for they may be clearly distinguished from the case at bar. A distinction between an exclamation of an actor in an affair is drawn in Louisville R. Co. v. Johnson, supra, in which statements of a motorman of a street car which had run over plaintiff were held admissible because he was a participant, while those of the conductor of the same car were held inadmissible. The doctrine was carefully considered in that opinion and the principle adhered to.

In L. & N. Railroad Co. v. Cox, supra, the exclamation of a bystander was an expression of opinion, and we said, respecting such character of declarations: "But, treated merely as an expression of opinion that was not brought to the attention of the actors, it was nothing more than hearsay evidence of the most objectionable character. If opinions expressed by every passer-by, adverse to one of the parties, is to be admitted, there is no reason why opinions expressed favorable to him should not also be admitted, and if this practice was allowed, it is manifest that there would be no end to the different views that would be exploited before the jury in almost every case of this character that came up, as there are so many persons who find time to express opinions as to the manner in which work they have opportunity to observe is being done."

We may conclude this discussion by affirming our pronouncement in the Johnson case, supra, namely: "But whatever may be the practice in other jurisdictions, we are satisfied with the soundness of the rule laid down by this court excluding the declarations or statements of bystanders, and are not disposed to depart from it in cases similar to the one under consideration."

After the appellant had closed, a deputy sheriff was recalled by the commonwealth and asked if, after the arrest of the appellant, she said: "No doubt but what she is dead and I don't feel I have killed no more than an ordinary piece of stock." Over the objection of appel-

lant, the witness answered that she did. The foundation for this evidence had been laid by asking the appellant if she had made such a remark. The court, however, did not admonish the jury that such evidence was for the purpose of contradiction, but admitted it as substantive proof, the same as if it had been given in chief.

In the case of Fugate v. Commonwealth, 202 Ky. 511, 260 S. W. 338, 340, also an appeal from Perry county, the same practice was indulged in, and with reference to it we said: "While trial courts have a broad discretion as to the time and manner of the introduction of evidence, the practice pursued in this case is not to be commended. The evidence in question consisted of statements and conduct on the part of appellant and of Pot Napier and Jake Fugate in his presence a short time before the homicide, and was substantive in its character. That being true, it was admissible in chief and no foundation of any kind was necessary. Had it been offered in chief, Neace . would have been asked to say what the witness said and did in his presence and the witnesses would have been permitted to testify in rebuttal with the proper advantage of the last say on the question. As it was, however, this advantage was given to the commonwealth, with a further advantage of having Neace answer yes or no to leading questions instead of giving his own account of what occurred in his presence. Robinson v. Commonwealth, 178 Ky. 557, 199 S. W. 28."

In Baker v. Commonwealth, 210 Ky. 524, 276 S. W. 550, the prosecution was permitted over objection to introduce as rebuttal certain police officers who testified as to a statement of the defendant which in its import is not unlike the one related here. It was substantive in character, and it was held that ordinarily the manner of introduction would authorize a reversal of the judgment, but, under the facts of the case, the abuse of discretion on the part of the trial court was not prejudicial. Since the evidence of the deputy sheriff in this case was also competent to rebut the claim of accidental killing, we would not reverse this judgment for that error. On another trial it should be introduced in chief.

The appellant testified that during the scuffle with the deceased over the pistol her dress was ripped and torn, and she produced it before the jury. Several witnesses were introduced in rebuttal by the commonwealth and testified that this dress was not the one she had on

at the time of the killing; that they had seen it several days before and it was then torn and in the same condition as when produced at the trial. The appellant thereafter called to the witness stand five witnesses, and offered to prove by them that this was the dress which she had on at the time of the killing. The court sustained the objections of the commonwealth and refused to let that evidence in. An avowal was made that the witnesses would testify that the dress worn by the defendant at the time was the one offered in evidence and that it was not previously torn.

Sections 221 et seq., Criminal Code, provide rules of practice respecting the introduction of evidence. Section 224 provides: ''The parties may then respectively offer rebutting evidence only, unless the court, for good reason in furtherance of justice, permit them to offer evidence upon their original case.''

The rebuttal evidence is not therefore limited to the party first introducing his witnesses. The introduction of evidence in a case must, of course, have some restriction, and the order lies chiefly in the sound judicial discretion of the trial judge; but in the exercise of that discretion it should ever be borne in mind that the supreme object is to elicit the truth. If it appear during the course of a trial that true conditions will be disclosed by permitting the introduction of witnesses, although out of the usual order, it is the duty of the court to permit their introduction. When the evidence of the appellant that the dress exhibited to the jury was torn in the scuffle with the deceased was contradicted, that became an important and perhaps controlling issue. The appellant's witnesses were then and there present and on the witness stand, and, even though it be considered that the appellant should have anticipated the contradiction and that such evidence should have been heard in chief, yet the court ought to have permitted the witnesses to testify concerning the matter in the interest of developing the true state of facts and to prevent an injustice being done the appellant. We regard the evidence as competent in rebuttal, even though it might have been heard in chief. Suppose, for instance, that, after these witnesses of the commonwealth had stated they had seen this dress in its torn condition a week before the homicide, the appellant could have proved that she had purchased it the day before the killing, would it not have been competent to

show that fact to contradict and impeach the testimony of these commonwealth's witnesses? See Moore v. Commonwealth, 143 Ky. 405, 136 S. W. 608; Williams v. Commonwealth, 90 Ky. 596, 14 S. W. 595, 12 Ky. Law Rep. 525.

The appellant's daughter and daughter-in-law and Daisy Darlin were indicted jointly with her; the last three being charged with aiding and abetting her in committing the murder. They, however, were not on trial. A witness introduced by the commonwealth was permitted to testify that at some undisclosed time she saw these young women running out of the home of Mrs. Darlin towards their home (also Mrs. Howard's), and that one of them had a cloth of some kind in her hand; the implication being that these girls were taking a weapon to the appellant, and such was the comment of the commonwealth's attorney, as appears in this record. The appellant objected to this testimony, and moved the court to exclude it, but was overruled. There is not a scintilla of evidence of any conspiracy between these parties and nothing that would make this evidence competent. It was therefore error to admit it.

In cross-examining the appellant, the commonwealth's attorney in several instances asked her about certain testimony, and then asked her about what other witnesses had said concerning the same thing, in this manner, for example, "I am asking you if what Maud Denton swore is a lie." Although to aid in the discovery of the truth reasonable latitude is allowed in the cross-examination of witnesses, and the method and extent must from the necessity of the case depend very largely upon the discretion of the trial judge, yet, where the cross-examination proceeds beyond proper bounds or is being conducted in a manner which is unfair, insulting, intimidating, or abusive, or is inconsistent with the decorum of the courtroom, the court should interfere with or without objection from counsel. The court not only should have sustained the objections to this character of examination, but should have admonished counsel against such improper interrogation.

There appear in the record extracts from the closing argument of the commonwealth's attorney which are unfair and improper. Somewhat similar statements were condemned in the cases of Baker v. Commonwealth, 106

Ky. 212, 50 S. W. 54, and Mount v. Commonwealth, 120 Ky. 398, 86 S. W. 710, 27 Ky. Law Rep. 788.

On the whole case we are of the opinion this defendant has not had a fair trial, and accordingly reverse the judgment, with directions to grant her a new trial.

Whole court sitting.