## McIntosh v. Commonwealth.

Nov. 9, 1945.

E. B. Rose, Ezart Ashcraft and H. L. Rudd for appellant.

Eldon S. Dummit, Attorney General, Guy H. Herdman, Assistant Attorney General, and W. L. Kash, Commonwealth Attorney, for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

The appellant was convicted of manslaughter and sentenced to two years' confinement in the State Reformatory. The only ground urged for a reversal of that judgment is that the trial judge abused a sound discretion in not permitting the Commonwealth's witness Sparks, who had been introduced in rebuttal, to answer certain questions which the appellant propounded to him on cross-examination. A determination of the merits of appellant's complaint necessitates a narration of a portion of the testimony.

According to the Commonwealth's testimony, Elva Puckett, James Robinson, and the appellant had congregated at the home of Jeff Sparks, which is in the community of a school house, appellant's home and store, and perhaps other residences. Presently the three left, and when they had reached a point near the school house the appellant, who on a prior occasion had made threats, pulled a pistol on Puckett. The latter, being young and active, wrested it from the appellant, fired it into the ground three times, and then snapped it several times to make sure that it had been completely emptied. The appellant, who appeared to be angry, said: "I will kill you, you red headed son of a bitch," and hurriedly left, going in the direction of his home. After appellant had been gone a short time, Puckett said he was going to take the pistol over and give it to him so that he would not be mad. He had gone only a short distance, however, when a rifle was fired from some nearby bushes, and three Commonwealth witnesses definitely placed the appellant at that point at that time. It would appear, however, that Puckett did not see him, for with the

empty pistol still in his hand, he said: "Lets go up there and see who fired the shot." When he reached the point from which the shot had come there was a loud report and he was seen to turn and fall. He had been shot in the abdomen with a shot gun. He died instantly.

In addition to stating that Puckett was mad at him and had been threatening his life, the appellant testified that Puckett threw a rock through the school house, and that when he remonstrated with Puckett the latter, with the assistance of Robinson, forcibly took the pistol which appellant was carrying under his shirt, shot under appellant's feet, called appellant a damned old grey haired son of a bitch, and threatened to shoot him if he did not get going. He says that he then went into the back room of his store—which was some little distance away—and that after he had been there a short time Puckett and Robinson came up, and the latter said: "If you go in there he will shoot you. Lets go on and you can give it to him in the morning." They did not enter the store, and shortly after that the appellant—according to his own testimony—picked up his shot gun and started to town to get the law. He then gave his version of what happened:

"I got a little above the school house and I seed them coming down the road towards me. They come right out and come on towards me. They come down the little creek bank; this other boy, this Robinson boy, come around me. I wheeled and went down on the edge of the bank there. There was some bushes there. He was in the corn field, the corn was about that high, I could see him coming at me. He picked up a rock and threw it at me, and said 'give up that gun.' He had the pistol right on me. He said 'God-damn you, I can stop you.' and he was coming right at me with the pistol on me, and when he done that I fired."

During the course of the appellant's personal testimony, he stated that while he and Puckett were at the Sparks' residence, which was before they went down to the school house, Puckett sold him some liquor and poured it out for him in Jeff Sparks' presence.

After the appellant had closed his case, and solely for the purpose of rebuttal, the Commonwealth introduced Jeff Sparks, who denied that Puckett sold the ap-

pellant any liquor or poured out any liquor, or that any such thing took place. Appellant's counsel, Mr. Rose, then took the witness for cross-examination, when the following occurred:

"Q. Before Puckett went down where he was later killed, did you tell Puckett not to go down there?

"Plaintiff Objected.

"Mr. Rose: You put this witness on—they put him on.

"Mr. Walker: They closed, Your Honor.

"The Court: I don't think so, gentlemen. Show where you have a right to.

"The Defendant excepted to the Court's ruling and avows that the witness, if he were permitted to answer would testify that he told Puckett not to go down to the place where he was later killed.

"Q. We want to ask the witness one more question, Your Honor.

"The Court: Go right ahead.

"Q. I want to ask this witness if Puckett told you there that he had some more cartridges?

"Plaintiff objected and the Court sustained the objection, to which ruling of the Court the Defendant excepted. Thereupon by way of avowal and out of the hearing of the jury, the witness answered as follows:

"A. He said he had two more cartridges in his pocket."

In support of his contention that the Court's rulings were so erroneous and prejudicial as to constitute an abuse of discretion and to entitle him to a new trial, the appellant relies upon section 224 of the Criminal Code of Practice, Marcum v. Commonwealth, 282 Ky. 799, 140 S. W. 2d 387; Fitzgerald v. Commonwealth, 269 Ky. 800, 108 S. W. 2d 1041; Howard v. Commonwealth, 227 Ky. 142, 12 S. W. 2d 324.

Severally or collectively the Code provision and the authorities cited do no more than affirm what the Commonwealth concedes; i. e., evidence which properly be-

longs in chief may be introduced in rebuttal when, in the exercise of a sound discretion, justice requires it. Whether in any given case the proffered evidence is of that strength and quality must be determined by considering it in its relationship to the other evidence and to the facts peculiar to that case.

Undoubtedly the offered testimony belonged in chief; and since appellant made no avowal that it was not available at that time, and since, when gauged by its substance and relationship to the other evidence, it is our view that it is not probable that its introduction would have affected the result of the jury's deliberation, we are of the opinion that the lower court did not abuse a sound discretion in refusing it.

Judgment affirmed.