## Grigsby v. Commonwealth.

October 1, 1946.

Rehearing denied Feb. 4, 1947.

615

Napier & Napier for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Woodrow Grigsby was sentenced to prison for two years for maliciously shooting and wounding Goodlow Sizemore with intent to kill him. Both of the parties lived on Ten Mile Creek in Perry County. The shooting took place around 8:00 p. m. on July 20, 1945, while Sizemore and his wife were sitting on the porch of their home. The main charge from the shotgun passed through the door and lodged in the wall, but several shots struck Sizemore.

Sizemore, Grigsby and several others met in front of Calloway Napier's home on Grapevine Creek around two o'clock in the afternoon of the day of the shooting. Napier's home is approximately three-quarters of a mile from Sizemore's home. Grigsby was drinking and he and Sizemore exchanged some heated words. In a short time Grigsby left the scene. Shortly thereafter Sizemore, who had been unsuccessful in borrowing Napier's gun, left for his home. Around five o'clock in the afternoon Grigsby went to Sizemore's home and asked for him, but he was absent. Mrs. Sizemore said Grigsby told her to tell her husband that if he was electioneering to come over to his house and he would electioneer with him. Grigsby admitted being by the Sizemore house about five o'clock in the afternoon, but said he went there to purchase some whiskey.

The testimony for the Commonwealth from this point is that around 7:30 p. m. Grigsby rode by the Sizemore home with his arms around the neck of his horse singing and "hollering." Around 8:00 p. m. Sizemore and his wife saw Grigsby out at their barn with a shotgun. The barn is about 25 steps from the house. Grover Gwin, a kinsman of Grigsby, was on the opposite side of the barn from where Grigsby stood. Sizemore saw Grigsby raise the gun and fire the shot. Grigsby and Gwin then left the scene. Grigsby's testimony, which is supported by that of Grover Gwin and his brother, is that, as he was passing the Sizemore home around 7:30, about dusky dark, Sizemore fired a shotgun at him. One shot struck him and several shots struck his horse. Grigsby's wife supported his testimony to the effect that he and his horse had been struck by a charge from a shotgun. Grigsby went on home and did not leave there for about 10 days, at which time he returned to the Army. He was not arrested until after he was discharged, though the sheriff visited Sizemore's home the morning after the shooting.

In rebuttal the Commonwealth introduced Calloway Napier, who said he saw Grigsby go in the direction of Sizemore's home about 30 minutes after dark. He said the Gwins passed his house in the same direction about 15 minutes later. The next witness in rebuttal was Martha Mullins. This witness testified that Grigsby and Grover Gwin passed her house in the direction of Sizemore's home shortly after dark. She heard a shot fired and shortly thereafter Grigsby and Gwin passed her house from the direction of Sizemore's home. Goldie Mullins testified in rebuttal, and her statement was substantially the same as that of Martha Mullins. None of these witnesses testified in chief, though Martha Mullins and Goldie Mullins were in the court room and had been sworn and put under rule.

The ground urged for reversal is that Grigsby's substantial rights were prejudiced by the introduction of evidence in rebuttal which should have been offered in chief.

We have examined all of the evidence carefully and have reached the conclusion that the appellant's contention is not well grounded. Section 224 of the Criminal

Code of Practice allows the trial court a discretion in permitting the Commonwealth to offer evidence in rebuttal. We have frequently held that, where there is no abuse of this discretion, and the substantial rights of the accused are not prejudiced, the case will not be reversed. Jordan v. Commonwealth, 240 Ky. 391, 42 S. W. 2d 509; Fox v. Commonwealth, 248 Ky. 466, 58 S. W. 2d 608; McIntosh v. Commonwealth, 300 Ky. 799, 190 S. W. 2d 477. Of course, where there is a deliberate holding back of evidence by the Commonwealth, with the view of gaining an undue advantage over the accused, a different situation exists. Lucas v. Commonwealth, 302 Ky. 512, 195 S. W. 2d 90. In the case at bar the evidence for both the Commonwealth and the appellant showed that he was around Sizemore's home about five o'clock in the afternoon, and that he passed there about 7:30 that night. We have noted that the appellant said Sizemore shot him as he passed and that he went straight on home and went to bed. The Commonwealth's evidence also showed that Grigsby passed the Sizemore home at about that time. Both sides testified that a shotgun was fired —the appellant placing the time at 7:30 p. m. and Sizemore placing it around 8:00 p. m. Martha Mullins and Goldie Mullins testified that, after Grigsby was seen going in the direction of Sizemore's home shortly after dark, he was seen coming back down the road from that direction. Clearly this evidence was introduced with the view of contradicting Grigsby's statement to the effect that he went straight home after passing Sizemore's home about 7:30 p. m. But, even if it be considered evidence in chief, its introduction did not run afoul of Section 224 of the Criminal Code of Practice.

Under the circumstances, we think the trial court was justified in allowing the challenged evidence to be offered in rebuttal.

Judgment affirmed.